**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cirino v. Bur. of Workers' Comp.*, **Slip Opinion No. 2018-Ohio-2665.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2665

CIRINO, APPELLEE, *v.* OHIO BUREAU OF WORKERS' COMPENSATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cirino v. Bur. of Workers' Comp.*, Slip Opinion No. 2018-Ohio-2665.]**

*Recipient of worker's compensation benefits brought action in common pleas court challenging the legality of fees incurred by some benefit recipients when accessing their benefits—Court of Claims has exclusive jurisdiction over this action because claim seeks legal relief rather than equitable relief— Court of appeals' judgment reversed.*

(No. 2017-0179—Submitted February 27, 2018—Decided July 10, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 104102, 2016-Ohio-8323.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we determine whether this suit is within the subject-matter jurisdiction of the court of common pleas or whether it falls within the exclusive jurisdiction of the Court of Claims. We conclude that the Court of Claims has exclusive jurisdiction over this suit because plaintiff-appellee, Michael Cirino, seeks legal relief rather than equitable relief. We therefore reverse the judgment of the Eighth District Court of Appeals, vacate all orders issued by the court of common pleas in this case, and remand the cause for the court of common pleas to issue an entry dismissing it.

## I. Relevant Background

{¶ 2} Defendant-appellant, the Ohio Bureau of Workers' Compensation, is responsible for the distribution of workers' compensation benefits to persons who have suffered workplace injuries. This suit challenges the legality of fees that were incurred by some benefit recipients when accessing their benefits, but in this appeal, we are required to determine only whether the suit was properly brought in the court of common pleas or whether it should have been brought in the Court of Claims, which has exclusive jurisdiction over many suits against state entities such as the bureau. R.C. 2743.03(A)(1). This determination requires an understanding of how the bureau makes workers' compensation benefit payments and the nature of Cirino's claim in this suit.

### A. The bureau's debit-card program for benefit payments

{¶ 3} Before 2006, the bureau paid benefits either by paper check or an electronic funds transfer ("direct deposit") to a recipient's bank account. Because payments through paper checks were much more costly than electronic payment methods like direct deposits, the bureau conducted a pilot program in 1997 to test the viability of making benefit payments through an additional electronic method— a debit card. The bureau contracted with Bank One to provide participants in the pilot program with their benefit payments through a Bank One–issued Visa debit

card that had been credited with their benefit payments. All costs of this program were paid by the bureau, including any fees Bank One would normally charge individuals using their services. The program was a success, and by 2000, a debit card became one of the standard ways benefit recipients could choose to receive their benefits.

{¶ 4} In June 2006, the General Assembly specifically gave the bureau the authority to use direct deposit for all benefit payments. R.C. 4123.311(A)(1). In particular, the bureau is permitted to require benefit recipients to designate a financial institution and a bank account into which payments can be made. R.C. 4123.311(A)(2). The bureau is also permitted to use a payment method similar to the debit-card program it tested in the 1990s. R.C. 4123.311(A)(3) (permitting the bureau to "[c]ontract with an agent to * * * [s]upply debit cards for claimants to access payments made to them" and "[c]redit the debit cards * * * with the amounts specified by the administrator [of the bureau] * * * by utilizing direct deposit of funds by electronic transfer"). Regardless of which payment method the bureau chooses to offer, however, it is required to ensure that all "administrative costs"— that is, all costs that are "incident to the discharge of the duties and performance of the activities of the * * * bureau"—are borne by the state and employers. R.C. 4123.341.

{¶ 5} In December 2006, the bureau entered into an agreement with JPMorgan Chase Bank, N.A., to distribute benefit payments through a debit-card-based program (the "debit-card program"). Under the agreement, Chase would establish an account for each benefit recipient and send each a Visa-branded debit card tied to the recipient's account. The bureau would then transfer funds to Chase, and Chase would credit each recipient's account with the full amount to which the recipient was entitled.

{¶ 6} The agreement also provided participants in the debit-card program with several different methods to access their funds. A few were free. For example,

funds could be withdrawn for free from any Chase ATM machine[1] or through one in-person visit to a teller at a Chase branch per month.[2] The funds could also be accessed for free by using the debit card to pay for goods and services directly at any Visa-accepting merchant. A few methods, however, were not free. Fees would be assessed for any visits to a teller after the first one each month ($5 per transaction), withdrawals from a non-Chase ATM ($1.50 per transaction) or an ATM outside the United States ($3 per transaction), and converting debit-card funds into foreign currencies (3 percent of the transaction value).[3] A fee schedule describing these fees was attached to the agreement between Chase and the bureau.

{¶ 7} The Ohio Administrative Code was also revised to implement the bureau's use of an electronic-payment system. Payments through direct deposits to a recipient's bank account or through a debit card became "[t]he standard method of delivering payment to a claimant or benefit recipient." Ohio Adm.Code 4123-3-10(A)(4).

{¶ 8} In early 2008, recipients were notified in writing that the bureau would use direct deposits and the debit-card program as the default methods for making benefit payments going forward. Recipients were also sent an enrollment packet and informed that if they did not provide a bank-account number for direct deposits, they would be enrolled in the debit-card program and sent a Chase debit card by default. Only in extraordinary circumstances, when hardship would result

---

[1] One employee of the bureau testified that there could be instances in which a benefit recipient was not able to access all of his or her benefit payment at one time due to barriers such as individual-transaction limits on ATM withdrawals. In 2011, Chase limited ATM withdrawals to $800 per day as part of an anti-money-laundering program.

[2] In 2012, the fee schedule was modified to permit one free teller visit per deposit made by the bureau. Several other fee changes beneficial to recipients were made as well.

[3] Fees were also assessed in other situations: transactions denied for insufficient funds ($0.50 per transaction), check issuance ($12.50 per request), card replacement after two free replacements per year ($7.50 per card), overnight-delivery service ($25 per delivery), and account inactivity ($1.50 per month).

from being forced to receive payments by direct deposit or the debit-card program, could a benefit recipient continue to receive paper checks.

**B.  Cirino incurs fees and files suit; the bureau**

**argues the suit was filed in the wrong court**

{¶ 9} Cirino began receiving workers' compensation benefits in 2009.  He was entitled to $443 per week, which was paid to him on a biweekly basis in the amount of $886.  At first he received his payments by paper check, which he deposited in his account with PNC Bank.  After receiving a few paper checks, however, he was notified that his payments would be made electronically and he would be enrolled in the debit-card program if he did not elect to receive direct deposits.  Cirino testified that he did not want to provide the bureau with his bank-account number, which was required in order to receive payments by direct deposit.  He was therefore sent a debit card and enrolled in the debit-card program.

{¶ 10} After he received the debit card, Cirino activated it and made a withdrawal of his $886 biweekly benefit in cash from a teller at a Chase branch location.  Later that same month, he attempted to make a second in-person withdrawal of $886, but his request was denied because his account did not have enough funds to provide him with $886 while also covering the $5 fee for making a second in-person withdrawal in the same month.  Cirino then went to a teller at another branch and withdrew $881 in cash, incurring a $5 fee for the transaction.

{¶ 11} After this, Cirino spoke to an attorney, who informed him that the $5 charge was a service fee imposed by Chase.  Cirino continued to withdraw cash through multiple teller visits per month, incurring numerous additional $5 fees.

{¶ 12} On May 21, 2010, Cirino filed the present class-action suit against the bureau on behalf of all recipients of workers' compensation benefits who had been charged fees in order to access their benefit payments.  His complaint, filed in the Cuyahoga County Court of Common Pleas, alleges that the debit-card program violates state law by permitting Chase to charge fees for certain services.

Specifically, Cirino alleges the program violates R.C. 4123.341, which provides that the bureau is required to ensure that all "administrative costs" are borne by the state and employers. Cirino also alleges that the debit-card program violates R.C. 4123.67, which provides that until compensation benefits are paid to a recipient, they "shall be exempt from all claims of creditors and from any attachment or execution, and [they] shall be paid only to the employees or their dependents." He seeks relief in the form of equitable restitution, declaratory relief, injunctive relief, and "other appropriate equitable relief."

{¶ 13} The bureau moved to have the case dismissed for lack of subject-matter jurisdiction. It argued that under state laws concerning the waiver of government immunity, the court of common pleas would have jurisdiction only if Cirino's claim were purely equitable in nature. It then argued that Cirino is ultimately seeking the payment of money to compensate for the fees he and the other class members had been charged. Because of this, the bureau argued, Cirino is seeking legal relief in the form of simple money damages, which means the claim falls within the exclusive jurisdiction of the Court of Claims.

{¶ 14} The trial court denied the motion, holding that although the claim here seeks the payment of money, it is equitable in nature, so it is within the subject-matter jurisdiction of the court of common pleas. It based this decision on *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, in which this court held that a suit seeking the return of specific funds wrongfully collected or held by the state is an equitable claim. In the trial court's view, Cirino's claim seeks the return of specific funds, namely the money withheld by Chase as fees in the debit-card program, and because Chase is an agent of the bureau, those specific funds are deemed to be in the hands of the bureau. As a result, the claim is seeking equitable relief, not simple money damages.

{¶ 15} On appeal, the Eighth District Court of Appeals affirmed. It agreed with the trial court that Cirino is seeking equitable relief. The Eighth District noted

that a claim for money is a claim for legal relief when the money sought is a substitute for a loss, but as the trial court observed, a claim is for equitable relief when it is for specific funds in the hands of the state. The Eighth District then concluded that Cirino's claim for the debit-card-program fees is equitable in nature because it is seeking specific funds in the hands of Chase, the state's agent, not money as a substitute for a loss.

{¶ 16} The bureau sought discretionary review in this court. We granted review over one proposition of law:

> Only a suit to recover specific funds held by a State defendant, or suits over which the State consented to be sued before the effective date of the Court of Claims Act, are proper in the common pleas court. All other suits against the State must be filed in the Court of Claims.

*See* 150 Ohio St.3d 1442, 2017-Ohio-7843, 82 N.E.3d 1175.

## II. Analysis

{¶ 17} We review the Eighth District's decision on subject-matter jurisdiction de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12. In doing so, we need not accept the allegations in the complaint as true; we may take into account facts established in the record. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 214, 358 N.E.2d 526 (1976).

### A. The jurisdiction of the Court of Claims

{¶ 18} The Court of Claims was created in 1975 with the enactment of the Court of Claims Act, R.C. Chapter 2743.01 et seq. R.C. 2743.03(A)(1) ("There is hereby created a court of claims"). The act contains a broad waiver of the state's immunity and provides that the state consents to be sued in the Court of Claims.

R.C. 2743.02(A)(1) ("The state hereby waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *."); *see also* Ohio Constitution, Article I, Section 16 ("Suits may be brought against the state, in such courts and in such manner, as may be provided by law"). This waiver and consent applies not just to the state itself but also to other state entities, including state instrumentalities such as the bureau. R.C. 2743.01(A) (defining "state" as "the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state," but not including "political subdivisions").

{¶ 19} The jurisdiction of the Court of Claims is defined by reference to the state's waiver of immunity in R.C. 2743.02. The Court of Claims has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code." R.C. 2743.03(A)(1). Despite the apparent breadth of the waiver, however, not all suits against the state are channeled to the Court of Claims by the act. To the extent that the state consented to be sued before the enactment of R.C. Chapter 2743, the chapter has no applicability. R.C. 2743.02(A)(1).

{¶ 20} As a practical matter, at least with respect to the issues raised in this case, the determination whether claims must be brought in the Court of Claims or whether they may be brought in a court of common pleas depends on whether the relief sought is equitable in nature, legal in nature, or both. A court of common pleas may hear claims against the state for declaratory judgment, injunctive relief, and other equitable relief. *Santos*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, at ¶ 9, quoting R.C. 2743.03(A)(2) ("R.C. Chapter 2743 does not divest other courts of this state of jurisdiction 'to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment,

injunctive relief, or other equitable relief' "). Suits for money damages against the state, however, fall within R.C. 2743.02(A)'s waiver of immunity and therefore within the exclusive, original jurisdiction of the Court of Claims. *Boggs v. State*, 8 Ohio St.3d 15, 16-17, 455 N.E.2d 1286 (1983); *see also Measles v. Indus. Comm.*, 128 Ohio St.3d 458, 2011-Ohio-1523, 946 N.E.2d 204, ¶ 7 ("The Court of Claims * * * has exclusive jurisdiction over civil actions against the state for money damages that sound in law"). Finally, suits involving both equitable and legal claims must be brought in the Court of Claims. Under R.C. 2743.03(A)(2), when a plaintiff pursuing a claim permitted by the waiver of immunity also presents a claim for "declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances," the Court of Claims has "exclusive, original jurisdiction to hear and determine that claim," too. Therefore, the resolution of this matter hinges on whether Cirino is seeking equitable relief, legal relief, or both.

### B.  Whether Cirino is seeking legal relief or equitable relief

{¶ 21} The bureau first argues that Cirino's claim was required to be brought in the Court of Claims because the relief he seeks is legal restitution. Although restitution can be either legal or equitable, *Santos* at ¶ 11, "whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought," (brackets sic) *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), quoting *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir.1994). We relied on *Great-West* in recognizing the following general distinction between legal and equitable restitution:

> Restitution is available as a *legal* remedy when a plaintiff cannot
> " 'assert title or right to possession of particular property, but in
> which nevertheless he might be able to show just grounds for

recovering money to pay for some benefit the defendant had received from him.' " * * * Restitution is available as an *equitable* remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."

(Emphasis sic.) *Santos* at ¶ 13, quoting *Great-West* at 213, quoting Dobbs, *Law of Remedies*, Section 4.2(1), 571 (2d Ed.1993).

{¶ 22} Based on this distinction, the bureau argues that Cirino's claim does not seek equitable restitution, because Cirino is not seeking specific funds in the possession of the bureau. Instead, the specific funds that Cirino claims he is entitled to—namely, the fees charged in the debit-card program—are in the hands of Chase, a third-party.

{¶ 23} The bureau also argues that the claim is legal in nature because its purpose is to compensate Cirino for a loss rather than prevent unjust enrichment by the bureau. As we have recognized, " ' "[d]amages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' " ' " (Emphasis deleted.) *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991), quoting *Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), quoting *Maryland Dept. of Human Resources v. Dept. of Health & Human Servs.*, 763 F.2d 1441 (D.C.Cir.1985), quoting Dobbs, *Handbook on the Law of Remedies* 135 (1973). *See also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir.1999) (stating that an award of equitable restitution "focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands"). In the bureau's view, the fact that Cirino seeks an

award measured by the fees charged by Chase proves that his claim is seeking compensatory relief rather than equitable restitution.

{¶ 24} Cirino counters that his claim is for equitable restitution because he is seeking specific funds in the possession of the bureau, not a substitute for a loss he has suffered. He argues that the workers' compensation benefits he is statutorily entitled to receive constitute the specific funds he seeks. He also argues that this case is just like *Santos*. In *Santos*, the bureau had collected money from individual benefit recipients based on a subrogation statute that gave it the right to do so. That statute was later ruled unconstitutional, however, and the plaintiffs sought to get that money back. We held that the suit sought specific funds in the hands of the bureau that had been wrongfully collected and therefore the claim was for equitable rather than legal restitution. In Cirino's view, the same is true here: his claim is for equitable restitution because he is seeking specific funds in the possession of the bureau.

{¶ 25} We agree with the bureau. "Regardless of how an action is labeled, the substance of the party's arguments and the type of relief requested determine the nature of the action." *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 38. In our view, the relief Cirino seeks is not restitution at all. It is best described as compensatory damages.

{¶ 26} Consistent with *Ohio Hosp. Assn.*, 62 Ohio St.3d at 105, 579 N.E.2d 695, *Black's Law Dictionary* defines "compensatory damages" as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered," *id.*, 472 (10th Ed.2014), and defines "[d]amages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury," *id.* at 471. "Restitution," by contrast, is a remedy "in which the measure of recovery is usu[ally] based not on the plaintiff's loss, but on the defendant's gain." *Id.* at 1507.

{¶ 27} Cirino's claim here challenges the legality of fees that were incurred by some benefit recipients. He claims that although the bureau made an initial

transfer of money to Chase in an amount equal to each benefit recipient's full payment, in certain situations the bureau allows Chase to charge fees out of those payments. The crux of the claim is therefore that the bureau has improperly allowed benefit recipients to be harmed by fees charged by Chase and that the proper relief is to have the bureau pay money to compensate for that loss. The claim therefore seeks compensatory relief—a classic form of legal relief.

{¶ 28} Our holding in *Santos* does not change our view on this point. In *Santos*, the bureau collected money directly from the plaintiffs and the claim sought the return of those specific funds. The money clearly had unjustly enriched the bureau, and we viewed the suit, which sought a payment by the bureau, as "an action to correct [that] unjust enrichment." That is different from the situation here. The only specific funds identified by Cirino are the fees collected by Chase, not any money withheld by the bureau. A payment *by the bureau* in an amount equal to those fees is therefore best described as compensation for a loss caused by Chase, not a correction of the bureau's unjust enrichment.[4]

{¶ 29} Finally, we reject the view of the court of appeals and the trial court that the claim is equitable because Chase was the bureau's agent. Assuming without deciding that an agency relationship existed, neither Cirino nor the trial court nor the court of appeals has pointed to evidence that the bureau has the power in any such relationship to control the disposition of funds that have been charged by Chase as fees. The court of appeals and the trial court did not analyze this issue, and Cirino has disclaimed reliance on an agency argument altogether. There is also evidence that the bureau in fact lacks the power to control the fees charged by

---

[4] The concurring opinion concludes that the relief sought here is legal restitution, as opposed to equitable restitution, but in this opinion we consider the broader question of whether it is restitution at all. We conclude that it is not. The concurring opinion's reliance on *Montanile v. Bd. of Trustees of Natl. Elevator Industry Health Benefit Plan*, __ U.S. __, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016), a case in which the relief sought was clearly restitution based on unjust enrichment, is therefore unpersuasive.

Chase. The bureau's benefits-payable manager testified in an affidavit that once the bureau makes the initial transfer of funds to Chase, it retains "no access to or control of the funds except under limited circumstances involving mistake or fraud."

**{¶ 30}** Without any argument or evidence that the bureau has the power to order Chase to return the fees to the benefit recipients, Cirino cannot be said to be seeking specific funds based on an agency relationship between the bureau and Chase. Instead, what Cirino is seeking is to have the bureau pay him money to compensate for the loss he suffered when those fees were charged, and that is relief in the form of traditional legal damages, which is within the exclusive, original jurisdiction of the Court of Claims.

### III. Conclusion

**{¶ 31}** Because Cirino's claim seeks legal relief, it may be brought only in the Court of Claims. Furthermore, Cirino's claims for declaratory judgment and injunctive relief must also be brought in the Court of Claims because they arise out of the same circumstances that gave rise to his claim for legal relief. R.C. 2743.03(A)(2). We therefore vacate all orders issued by the court of common pleas in this case, including the order certifying a class, and remand the case for dismissal for lack of subject-matter jurisdiction.

Judgment reversed

and cause remanded.

FISCHER and DEGENARO, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY and FRENCH, JJ.

O'DONNELL, J., dissents, with an opinion.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 32} I agree with the lead opinion that Michael Cirino's claim is for legal relief and that jurisdiction rests in the Court of Claims. But I believe that this case is easily resolved when it is understood that Cirino is not seeking restitution of particular funds held by the Bureau of Workers' Compensation ("BWC") to which he can trace entitlement.

{¶ 33} In addition to other relief, Cirino seeks restitution from the BWC of the amounts that were withheld as fees by Chase Bank, N.A. Almost always, suits that seek a payment of a sum of money are suits for money damages—"the classic form of *legal* relief," (emphasis sic) *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)—because " 'they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' " *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting). Only in a narrow set of circumstances—when a plaintiff seeks specifically identifiable funds in the control of the defendant—is a suit for money properly understood as equitable.

{¶ 34} The lead opinion's determination that Cirino's claim is legal rather than equitable hinges on its characterization of the relief sought. It reasons, "The crux of [Cirino's] claim is * * * that the [BWC] has improperly allowed benefit recipients to be harmed by fees charged by Chase and that the proper relief is to have the [BWC] pay money to compensate for that loss." Lead opinion at ¶ 27. Thus, it concludes, Cirino seeks compensatory damages, a form of legal relief.

{¶ 35} The dissent, on the other hand, reaches the opposite result because it characterizes the relief sought differently. It says that Cirino's claim sounds in equity because "he seeks the balance of his benefit payments from the [BWC]— the very thing to which he is statutorily entitled but did not receive, due to the

[BWC's] improper shift of administrative expenses to claimants in violation of R.C. 4123.341." Dissenting opinion at ¶ 52.

{¶ 36} That opposite results are reached by the lead opinion and the dissenting opinion highlights the imprecision of their approaches: allowing the determination whether a claim is legal or equitable to turn on the characterization of the form of relief sought invites inconsistent results and provides little guidance for lower courts. "It does not take much lawyerly inventiveness to convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid, or for an order reversing the agency's decision not to pay." *Bowen*, 487 U.S. at 915-916, 108 S.Ct. 2722, 101 L.Ed.2d 749 (Scalia, J., dissenting).

{¶ 37} In my view, this case is resolved far more cleanly by focusing on the locus of the specific funds to which Cirino claims entitlement. The United States Supreme Court's decision in *Great-West,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635, underlines the importance of identifying the specific funds that the plaintiff seeks to recover. In *Great-West*, the court looked back to "the days of the divided bench" to mark the line between legal restitution and equitable restitution. *Id.* at 212.

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit.

(Emphasis deleted.) *Id.* at 213, quoting Dobbs, *Law of Remedies*, Section 4.2(1), 571 (2d Ed.1993). On the other hand, "a plaintiff could seek restitution in equity,

ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." (Emphasis deleted.) *Great-West* at 213, citing Dobbs, Section 4.3(1), at 587-588. In *Great-West*, the money sought by the plaintiffs was never in the defendants' possession, so the court concluded that the plaintiffs were seeking legal restitution. *Great-West* at 214.

{¶ 38} Here, the BWC initially possessed the funds for benefit recipients like Cirino, s*ee* R.C. 4123.30, and then, under its agreement with Chase, it transferred the funds to the bank. In other words, the "particular funds" sought by Cirino are no longer in the BWC's possession. The question is what effect does the BWC's having disbursed the funds to Chase have on the classification of Cirino's action? Another United Supreme Court case indicates the answer.

{¶ 39} In *Montanile v. Bd. of Trustees of Natl. Elevator Industry Health Benefit Plan*, __ U.S. __, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016), Robert Montanile was injured in an automobile accident, and his medical expenses were paid under his health-benefits plan. Montanile then received a settlement from the negligent driver who caused the accident. By the time the plan's administrator sought reimbursement of its payment from Montanile under the plan's subrogation clause, Montanile had spent most of the funds. The court concluded that to the extent that the specific funds had been spent on nontraceable items and recovery was sought from Montanile's general assets, the remedy sought was a legal remedy, *id.* at __, 136 S.Ct. at 658-659, 662.

{¶ 40} Here, the BWC disbursed the funds held for Cirino to the bank. After the specific funds to which Cirino claims he was entitled were transferred to Chase, the bank deducted the fees that are at issue in this lawsuit. Thus, any remedy due Cirino would be paid not from particular funds held by the BWC to which Cirino can trace entitlement, but from the BWC's funds generally. As in *Montanile*,

16

the restitution sought is legal relief, not equitable relief. Accordingly, exclusive jurisdiction resides with the Court of Claims.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 41} Respectfully, I dissent.

{¶ 42} In my view, Michael Cirino's claim seeks equitable relief for restoration of the administrative costs incident to distribution of worker compensation benefits and therefore the common pleas court has exclusive jurisdiction over this matter. Accordingly, I would affirm the judgment of the Eighth District Court of Appeals.

### Relevant Background

{¶ 43} In 2006, the General Assembly enacted R.C. 4123.311, authorizing the Bureau of Workers' Compensation to "[c]ontract with an agent" to "[s]upply debit cards for claimants to access payments made to them" and "[c]redit the debit cards * * * with the amounts specified by the administrator [of the bureau]." As a result, the bureau contracted with JPMorgan Chase Bank to distribute benefits electronically through debit cards. Pursuant to the contract, Chase established accounts for each benefit recipient and issued debit cards linked to each recipient's account. The bureau transferred funds for benefit payments to Chase to be credited to the claimants' debit card accounts. Chase exacted fees from benefit recipients for various transactions, including a $5 fee for any teller transaction after the first monthly teller visit.

{¶ 44} In 2009, Cirino began receiving a biweekly benefit of $886 in the form of a paper check, which he deposited into his personal checking account. When Cirino enrolled in the debit card program, he withdrew his $886 biweekly benefit from a teller at a Chase branch and was charged no fee. Two weeks later, when Cirino withdrew his next biweekly payment, again using a teller, Chase

assessed a $5 fee for making a second teller withdrawal in one month.  Thus, Cirino was unable to withdraw the entirety of his $886 benefit.

{¶ 45} In May 2010, Cirino commenced the instant action in the Cuyahoga County Court of Common Pleas asserting claims against the bureau for violating R.C. 4123.341 and 4123.67 and unjust enrichment seeking relief in the form of restitution, equitable disgorgement, and injunctive and declaratory relief.  The bureau moved for dismissal for lack of subject matter jurisdiction, asserting that the Court of Claims has exclusive jurisdiction because Cirino's claim for restitution is actually a claim at law for money damages because it seeks funds that are not in the bureau's possession.  The common pleas court concluded that Cirino's claims were equitable in nature and that it had subject matter jurisdiction over the lawsuit.  The Eighth District affirmed.

### Law and Analysis

*Statutory Obligations of the Bureau*

{¶ 46} R.C. 4121.39(B) charges the bureau with "[a]ward[ing] compensation and mak[ing] payment on all noncontested claims."  R.C. 4123.341 provides:

> The administrative costs of * * * the bureau of workers' compensation shall be those costs and expenses that are incident to the discharge of the duties and performance of the activities of * * * the bureau under this chapter and Chapters 4121., 4125., 4127., 4131., and 4167. of the Revised Code, and *all such costs shall be borne by the state and by other employers* amenable to this chapter * * *.

(Emphasis added.)  R.C. 4123.311 authorizes the bureau to "[c]ontract with an agent" to (1) "[s]upply debit cards for claimants to access payments made to them"

18

and (2) "[c]redit the debit cards * * * with the amounts specified by the administrator [of the bureau]." Except in limited circumstances not applicable here, workers' compensation benefits "shall be paid only to the employees or their dependents." R.C. 4123.67.

*Equitable vs. Legal Remedy*

{¶ 47} Restitution can be either a legal or an equitable remedy "for an unjust enrichment of one party at the expense of another." *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 11 citing Restatement of the Law, Restitution at 9 (1937). To determine whether a claim for restitution is seeking legal or equitable relief, we examine the basis for the claim and the nature of the underlying remedies sought. *Id*. at ¶ 13.

{¶ 48} In *Santos*, this court held that "[a] suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." *Id*. at syllabus; *see also id.* at ¶ 14, quoting *Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), quoting D. Dobbs, *Hornbook on the Law of Remedies Section* 3.1, at 135 (1973) ("specific remedies, like restitution, " 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled" ' ").

{¶ 49} In *Santos*, an injured worker, Angel Santos, received benefits from the bureau and later settled an intentional tort claim against his employer. *Santos* at ¶ 2. The bureau asserted subrogation rights and collected the settlement proceeds pursuant to a statute later found to be unconstitutional. *Id*. at ¶ 3, 5. Santos filed a class action complaint in the common pleas court seeking to recover the monies collected in subrogation by the bureau. *Id*. at ¶ 3, 4. The bureau moved for dismissal for lack of subject matter jurisdiction, arguing that the Court of Claims, not the common pleas court, had exclusive jurisdiction over the action. *Id*. at ¶ 5. This court concluded that the suit was brought in equity and explained that unlike money damages—which compensate a plaintiff for a suffered loss—specific

remedies are not substitute remedies but attempt to give the plaintiff the very thing to which he is entitled. *Id*. at ¶ 14, citing *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105-106, 579 N.E.2d 695 (1991).

{¶ 50} Similarly, in *Ohio Hosp. Assn.*, the Ohio Department of Human Services had promulgated a new administrative rule lowering certain Medicaid reimbursement rates. As a result, several Medicaid providers filed a complaint against the department seeking declaratory, injunctive, and monetary relief and alleging the department had been unlawfully withholding funds pursuant to the new reimbursement rate. We held that the administrative rule had been improperly adopted because it was implemented solely for budgetary reasons, without consideration of its effect on the quality of care. *Id*. at paragraph one of the syllabus. In determining whether the state was immune from suit for reimbursement of monies withheld under an invalid administrative rule, this court held "[t]he reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity," and we therefore concluded that the monetary relief sought was in the nature of specific relief, that is, payment of specific funds of a determined amount to which the Medicaid providers were statutorily entitled and not an award of money damages to compensate them for losses they suffered or would suffer as a result of the invalid administrative rule. *Id.* at 105.

{¶ 51} Like the claims asserted in *Santos* and *Ohio Hosp. Assn.*, Cirino's claim is equitable in nature. The applicable statutes, R.C. 4121.39(B) and R.C. 4123.341, require the bureau to pay Cirino's entire $886 biweekly benefit to him and to bear all administrative costs associated with making those benefit payments. In this case, Chase acted as the bureau's agent pursuant to R.C. 4123.311(A)(3) to make payments to benefit recipients by debit card. Although the bureau transferred the entire biweekly benefit to Chase, it knew that in certain circumstances, Chase assessed fees depending on the recipient's method of accessing the funds. These

fees reduced Cirino's benefits and are costs of administering the benefits program and therefore must be borne by the state.

{¶ 52} Just as the *Santos* plaintiffs' suit seeking the return of specific funds wrongfully collected or held by the state was brought in equity, *Santos*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, at ¶ 17, Cirino's complaint was brought in equity because he seeks the balance of his benefit payments from the bureau—the very thing to which he is statutorily entitled but did not receive, due to the bureau's improper shift of administrative expenses to claimants in violation of R.C. 4123.341.

{¶ 53} Because Cirino's claim seeks the full monthly benefit of his award, the administrative costs assessed by Chase are costs of administering the benefits program to be borne by the state. Thus, this is an equitable claim and therefore the common pleas court, not the Court of Claims, has jurisdiction in this case.

### Conclusion

{¶ 54} Cirino's claim is equitable because it seeks full payment of the benefit lawfully awarded to him by the bureau. Thus, the Cuyahoga County Court of Common Pleas has exclusive jurisdiction in the matter and the judgment of the Eight District Court of Appeals should be affirmed.

_____

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; Bashein & Bashein Co., L.P.A., W. Craig Bashein, and John P. Hurst; and Charles J. Gallo Co., L.P.A., and Charles J. Gallo, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Mark E. Mastrangelo and Jeffrey B. Duber, Assistant Attorneys General; and Taft, Stettinius & Hollister, L.L.P., Ronald D. Holman II, Michael J. Zbiegien Jr., and Daniel H. Bryan, for appellant.

_____