[Cite as *Dunlop v. Ohio Dept. of Job & Family Servs.*, 2019-Ohio-3632.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| Matthew J. Dunlop, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-58 |
| v. | : | (C.P.C. No. 12CV-6052) |
| Ohio Department of Job and Family Services, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on September 10, 2019


**On brief:** *The Tyack Law Firm Co., L.P.A., Jonathan T. Tyack*, and *Holly B. Cline*, for appellant. **Argued:** *Holly B. Cline*.

**On brief:** *Carpenter Lipps & Leland LLP, Michael H. Carpenter*, and *Jennifer A.L. Battle*, for appellee.


APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Matthew J. Dunlop, appeals from the judgment of the Franklin County Court of Common Pleas denying appellant's motion for summary judgment and granting the motion for summary judgment filed by defendant-appellee, Ohio Department of Job and Family Services ("ODJFS"). For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This is the third appeal before this court arising from appellant's complaint against ODJFS in regard to child support payments that were withheld by his employer in

an amount in excess of the wage garnishment order. We have previously described the pertinent background facts of this case as follows:

> In May 2011, appellant sued ODJFS in the Court of Claims of Ohio with a complaint nearly identical to the one here. The Court of Claims dismissed the complaint for lack of jurisdiction, finding appellant's claims equitable in nature. This court affirmed that decision in *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-929, 2012-Ohio-1378 ["*Dunlop I*"], and the Supreme Court of Ohio declined to take further review of the matter.
>
> Just after filing his complaint in the Court of Claims, appellant filed the instant class action complaint, on behalf of himself and similarly situated individuals he estimates to number in excess of 100,000, alleging claims of conversion, equitable restitution, constructive trust, breach of fiduciary duty and wrongful disposition against ODJFS and 300 John Doe defendants, and seeking actual money damages, equitable restitution and/or disgorgement of improperly obtained funds, a "constructive trust over all funds improperly obtained by ODJFS," injunction, and declaratory relief. (Compl. at 3.) Appellant alleges that each John Doe defendant "is a joint venture, partner, subsidiary, parent, agent, representative, franchisee or alter ego" of ODJFS, has a "unity of interest" with ODJFS, and "is legally, equitably or otherwise responsible in some manner for the damages" alleged. (Compl. at 3, 4.)
>
> The complaint alleges that ODJFS knowingly collects more money than he, and persons like him, have been ordered to pay in child support and then passes that money on to others (such as ex-spouses and/or the federal government in certain public assistance cases) and/or retains the over-collected funds. The complaint states under current ODJFS policies, overpaid child support may not be recouped while an active child support order is in place and that greater than 114,000 open child support accounts with ODJFS show a credit balance. Appellant alleges that Ohio's system of recoupment does not comport with federal regulations requiring prompt refund of amounts improperly withheld.
>
> Specific to his personal situation, appellant alleges in his complaint that after his divorce in 2007, the court of common pleas ordered him to pay $691.72 per month beginning January 1, 2008. He alleges that the Franklin County Child Support Enforcement Agency ("CSEA") sent his employer a garnishment order that specified the amount of the monthly

support, provided a calculation to determine how much money should be withheld from his compensation based on the company's pay cycle, and included a handwritten withholding amount on the instructions. On later suspecting that he was paying in excess of the order and contacting the CSEA, appellant alleges that the CSEA told him he was building a credit balance as a result of his employer's error in setting up the garnishment and that he would have to wait until the child support order was near expiration to recoup the overpayment. When appellant then spoke to his employer about the issue, appellant alleges that his employer told him the garnishment amount was based on the order from the CSEA and that they could not take instructions from appellant. Appellant alleges that he continues to carry a credit balance.

In the complaint, under his claim for conversion, appellant asserts that ODJFS had no legal right to collect funds in excess of the court-ordered child support payment or charge percentage fees, if any, thereon without his consent. To appellant, he is effectively permanently deprived of his use of those funds and, "even to the extent that there is a mechanism to recoup funds at the conclusion of the child support term, no interest is paid on those funds." (Compl. at 15.) As such, appellant asks for actual damages for each class member into a fluid recovery fund, plus interest. Under his claim for equitable restitution, appellant alleges that ODJFS knowingly received and held or distributed money above the ordered child support belonging to him and that this constitutes a wrongful action. As such, appellant asks for restitution of all funds collected over the ordered child support to each class member into a fluid recovery fund, plus interest.

On June 25, 2012, ODJFS filed a motion to dismiss for failure to state a claim, pursuant to Civ.R. 12(B)(6), which the trial court initially denied on April 15, 2014. On April 20, 2016, ODJFS asked the trial court to reconsider its decision based on new authority, *Cullinan v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-390, 2016-Ohio-1083. Appellant filed a memorandum contra and ODJFS replied.

(Footnote omitted.) *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-550, 2017-Ohio-5531, ¶ 2-7 ("*Dunlop II*"). On July 13, 2016, the trial court granted ODJFS's motion for reconsideration and dismissed the complaint pursuant to Civ.R. 12(B)(6). Appellant appealed, and in *Dunlop II*, we concluded that "[c]onsidering our limited standard of review and the distinctions between this appeal and *Cullinan* [*v. Ohio Dept. of*

*Job & Family Servs.*, 10th Dist. No. 15AP-390, 2016-Ohio-1083], we agree with appellant that the trial court erred in determining appellant's complaint was not sufficient to state a claim for wrongful collection or retention of funds to survive ODJFS's Civ.R. 12(B)(6) motion to dismiss." *Id.* at ¶ 21. We noted that "[w]hether appellant will be able to establish his allegations as facts on the record and then demonstrate those facts amount to wrongful conduct to support his claim [was] beyond the scope of our review." *Id.* at ¶ 20.

{¶ 3} On remand, the parties each filed motions for summary judgment on all claims. On December 31, 2018, the trial court granted ODJFS's motion for summary judgment and denied appellant's motion for summary judgment. In doing so, the trial court found that similarly to *Cullinan*, ODJFS did not act wrongfully in receiving and remitting appellant's child support payments, and, therefore, appellant could not establish a claim for equitable restitution. The trial court emphasized the evidence showed, and the parties agreed, that appellant's employer did not comply with the court order and is solely responsible for the excess withholding and that appellant failed to point to any rule or law that requires ODJFS to correct a withholding in the manner argued by appellant. Finally, the trial court noted appellant's constitutional claims were not raised in his complaint, and, regardless, his attempt to appeal the constitutional issues posed only conclusory assertions unsupported by legal authority.

{¶ 4} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 5} Appellant assigns the following as trial court error:

[1.] The Court of Common Pleas does not have original subject matter jurisdiction over Plaintiff-Appellant Matthew Dunlop's claims against Defendant-Appellee Ohio Department of Job and Family Services. Thus, the trial court's ruling on the parties' summary judgment motions are void.

[2.] Assuming *arguendo* the common pleas court has subject matter jurisdiction over Mr. Dunlop's claims, the trial court erred by denying Plaintiff-Appellant's Motion for Summary Judgment.

[3.] Assuming *arguendo* the common pleas court has subject matter jurisdiction over Mr. Dunlop's claims, the trial court erred by granting Defendant-Appellee's Motion for Summary Judgment.

### III. STANDARD OF REVIEW

{¶ 6} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

{¶ 7} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

### IV. LEGAL ANALYSIS

#### A. Appellant's First Assignment of Error

{¶ 8} In his first assignment of error, appellant contends the trial court lacked subject-matter jurisdiction over his claims against ODJFS and, therefore, erred in ruling on the parties' motions for summary judgment. Because res judicata bars relitigation of this issue within the procedural posture of this case, we find appellant's assignment of error is without merit.

{¶ 9} To support his assignment of error, appellant specifically argues his claims include a legal claim, and, therefore, the trial court lacked jurisdiction based on the Supreme Court of Ohio ruling in *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d

333, 2018-Ohio-2665 (O'Donnell, J., dissenting), which was decided five months prior to the trial court's decision on summary judgment.[1]   As a result, appellant maintains the judgment of the trial court is void, res judicata does not apply since subject-matter jurisdiction may be raised at any time, the law of the case doctrine does not apply since an intervening court decision (*Cirino*) constitutes an exception to the doctrine, and the case should have been dismissed to avoid injustice.

{¶ 10} ODJFS responds that appellant is barred from relitigating jurisdiction by the doctrine of res judicata since the question of whether his claims belonged in the Court of Claims or the court of common pleas was already litigated in this case by courts of competent jurisdiction.   ODJFS asserts that although subject-matter jurisdiction may be raised at any time, once it is litigated, such determination is subject to res judicata and a change in decisional law does not bar the application of the doctrine of res judicata.

{¶ 11} Collateral estoppel, "an aspect of res judicata," prohibits "relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action." (Internal citations omitted.)   *Lowe's Home Ctr., Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, ¶ 33.   Generally, "[t]he bar of res judicata does not apply where the prior action was void for lack of subject matter jurisdiction."   *Bakhtiar v. Saghafi*, 8th Dist. No. 106587, 2018-Ohio-3796, ¶ 21, *discretionary appeal not allowed* by 2019-Ohio-173.

{¶ 12} However, "[r]es judicata applies to bar *relitigation* of the issue of subject-matter jurisdiction." (Emphasis added.)   *In re A.R.*, 10th Dist. No. 16AP-482, 2017-Ohio-1575, ¶ 10.   *See Bakhtiar* at ¶ 21 ("[W]here the question of subject matter jurisdiction has been fully litigated, res judicata applies to the final determination and it is not subject to

---

[1] *Cirino*, decided July 10, 2018, involved a Bureau of Workers' Compensation ("BWC") contract with Chase Bank, whereby BWC agreed to deposit claimants' workers' compensation benefits into a Chase account, and Chase agreed to provide claimants with access to their benefits.   Chase deducted fees from the claimants' accounts for certain transactions and a class action suit followed seeking to compel BWC to compensate them for the fees charged by Chase.   The 6-1 majority in *Cirino* found the Court of Claims of Ohio had jurisdiction over the complaint rather than the court of common pleas, although the majority was split between a three-justice lead opinion and a three-justice concurrence.   The lead opinion determined the complaint sought what was essentially compensatory damages for a loss caused by a third party (Chase) and not a correction of the BWC's unjust enrichment through specific, identifiable funds.   The concurrence determined that by "focusing on the locus of the specific funds to which [the appellant] claims entitlement" rather than the characterization of the claim, the complaint sought legal restitution.   *Id.* at ¶ 37.   The dissent believed the appellant set forth claims for equitable restitution, falling within the jurisdiction of the court of common pleas.   *See also Vance v. State*, 10th Dist. No. 18AP-484, 2019-Ohio-1027, ¶ 13-37.

collateral attack."). In *A.R.*, this court noted that "[a]lthough it is a correct statement of law that subject-matter jurisdiction may be raised at any time, * * * once a jurisdictional issue has been fully litigated and determined by a court that has authority to pass upon the issue, such determination is res judicata in a collateral action and can only be attacked directly by appeal." *Id.* at ¶ 10, citing *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 23; *Squires v. Squires*, 12 Ohio App.3d 138 (12th Dist.1983).

{¶ 13} Furthermore, "[g]enerally, a change in decisional law which might arguably reverse the outcome in a prior civil action does not bar the application of the doctrine of *res judicata*. Since the doctrine of *res judicata* serves important public and private interests, exceptions to the doctrine's application should be narrowly construed." (Emphasis sic.) *Natl. Amusements v. Springdale*, 53 Ohio St.3d 60 (1990), syllabus. "To hold otherwise would enable any unsuccessful litigant to attempt to reopen and relitigate a prior adverse final judgment simply because there has been a change in controlling case law. Such a result would undermine the stability of final judgments and, in effect, render their enforceability conditional upon there being no change in the law." (Internal quotations omitted.) *Id.* at 63. A "few existing exceptions" have been recognized as an exception to the doctrine of res judicata based on a change in decisional law, such as "a major change in constitutional principles" as applied to certain specific areas of law. *Id.* However, the *Natl. Amusements* court warned "courts should be slow to broaden the few existing exceptions" and declined in that case to exempt from res judicata an allegedly "fundamental change in the controlling law" brought about by a new appellate decision. *Id.* at 62-63.

{¶ 14} Here, this court had authority in *Dunlop I* to pass on whether the Court of Claims erred in finding it lacked jurisdiction over appellant's claims. Appellant appealed our decision, and the Supreme Court declined jurisdictional review. Appellant does not dispute the present complaint contains essentially the same claims and the same parties as the case he brought in the Court of Claims. Pursuant to *A.R.*, once a jurisdictional issue has been fully litigated and determined by a court that has authority to pass on the issue, such determination is res judicata in a collateral action. Moreover, appellant has not persuaded us *Cirino* presents "a change in decisional law" of the extraordinary sort described by *Natl. Amusements* to avoid the general rule that decisional law changes—even those that arguably reverse the outcome in a prior civil action—do not bar the application of the

doctrine of res judicata in this case. *Id.* at syllabus. Therefore, considering all the above, we find res judicata applies to bar appellant from attempting to relitigate subject-matter jurisdiction. *A.R.*

{¶ 15} Accordingly, appellant's first assignment of error is overruled.

### B. Appellant's Third Assignment of Error

{¶ 16} For clarity of analysis, we will address appellant's remaining two assignments of error, pertaining to the merits of summary judgment, out of order. In his third assignment of error, appellant contends the trial court erred in granting summary judgment in favor of ODJFS. We disagree.

{¶ 17} To support his assignment of error, appellant first cites to the concurring opinion in *Cirino*, 2018-Ohio-2665, and *Montanile v. Bd. of Trustees of Natl. Elevator Industry Health Benefit Plan*, 136 S.Ct. 651 (2016), in arguing he was not required to demonstrate ODJFS acted wrongfully because he sought legal rather than equitable relief. In essence, appellant argues the focus should not have been on ODJFS's "wrongfully obtained gain" but, rather, appellant's "loss at [ODJFS's] hands." (Appellant's Brief at 45.)

{¶ 18} Appellant's argument is based on the characterization of the claim as seeking legal relief. In *Dunlop I*, this court addressed this issue and disagreed with appellant. *Id.* at ¶ 16 ("It is clear that, in the present case, appellant is seeking recovery of specific monies and not compensation * * *. Appellant's claim in his complaint is that he seeks reimbursement of funds that ODJFS allegedly wrongly collected for child support. * * * As made clear by *Santos* [*v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28] and *Interim HealthCare* [*of Columbus, Inc. v. Dept. of Adm. Servs.*, 10th Dist. No. 07AP-747, 2008-Ohio-2286], this type of claim is one for equitable restitution."). The Supreme Court declined jurisdictional review of the matter, and this case proceeded as a *Santos* equitable restitution claim in the court of common pleas, through the Civ.R. 12(B)(6) appeal in *Dunlop II* where appellant specifically argued "the Complaint * * * sufficiently alleges a claim for wrongful collection under *Santos*"[2] and through remand in the court of common pleas. *Dunlop II*, 2017-Ohio-5531, at ¶ 13. We find that to the extent appellant is attempting

---

[2] While still maintaining he has a conversion claim against ODJFS, in his motion for summary judgment, which was filed prior to *Cirino*, he "recognize[d] that, pursuant to *Santos*, this court is required to view [appellant's] claim as an equitable claim of wrongful collection and/or retention." (Feb. 23, 2018 Mot. for Summ. Jgmt. at 12, fn. 3.)

to relitigate this matter, the doctrine of res judicata bars its review. *Lowe's Home Ctr.*, 2018-Ohio-1974, at ¶ 33. Regardless, we note a legal claim for conversion likewise incorporates the "wrongful" exercise of dominion over property. *Dunlop I* at ¶ 8.

{¶ 19} To this end, appellant next argues, assuming arguendo appellant was required to demonstrate ODJFS acted wrongfully in receiving and remitting his child support payments, at minimum, a genuine issue of material fact exists as to whether ODJFS's conduct was "wrongful." (Appellant's Brief at 46.) Specifically, appellant argues: ODJFS's "knowledge of the over-collection issue * * * and four-year failure to correct said issue when ODJFS had a duty to collect and remit the *correct* court-ordered amount was wrongful"; and ODJFS's "excessive garnishment" which "took money from [appellant] without statutory or regulatory authority" constituted wrongful collection and/or retention of funds under *Santos*.[3] (Emphasis sic.) (Appellant's Brief at 46, 47.) Appellant also mentions a government entity may not take another's property without due process of law and discusses how this concept spans criminal law, tax law, intellectual property law, consumer law, and the applicable refund provisions therein.[4]

{¶ 20} ODJFS counters that appellant cannot establish, under any theory, ODJFS engaged in a wrongful act. According to ODJFS, all the evidence shows ODJFS acted as statutorily mandated, and the evidence demonstrates someone other than ODJFS (or Franklin County Child Support Enforcement Agency ("FCCSEA")) was responsible for the initial error in appellant's child support withholding. ODJFS contends that nothing in the statutory framework prevents ODJFS from accepting payments in excess of the court-ordered child support amount or imposes a duty on ODJFS to investigate whether an obligor's overpayments were intentional or not and that disbursing the payments was

---

[3] Although appellant initially mentions in his appellate brief facts that either a state employee or appellant's employer made a handwritten, incorrect pay calculation on the order, he does not argue ODJFS acted wrongfully by providing an incorrect calculation to his employer. We further find such a contention—that ODJFS or Franklin County Child Support Enforcement Agency ("FCCSEA") provided the calculation to appellant's employer—to be unsupported by the evidence. Appellant testified he had no knowledge regarding who provided the incorrect calculation on the order, and unrebutted testimony from FCCSEA showed that the miscalculation could not have been performed by ODJFS or FCCSEA since it did not know and was not provided pay cycle information.

[4] We note the trial court found appellant did not raise the constitutional issues in his complaint and, regardless, failed to properly support the arguments. Appellant does not assign the trial court's finding on this issue as error or otherwise provide an argument as to why these issues were properly raised and argued. We agree with the trial court that these issues were not raised and were argued in a conclusory manner, and we decline to address the merits of such issues here. App.R. 16(A)(7).

statutorily mandated. ODJFS emphasizes appellant can receive the overpaid amount by following a correct legal process, including impoundment, recoupment, private settlement, or a court modification of his child support order. In support of its argument, ODJFS cites to this court's opinion in *Cullinan*, 2016-Ohio-1083. Lastly, ODJFS argues in the alternative that it met its burden demonstrating summary judgment is appropriate on additional grounds, including alternative defenses, and that appellant offered no evidence to meet his reciprocal burden.

{¶ 21} We agree with ODJFS that, similar to *Cullinan*, the lack of wrongful conduct on the part of ODJFS supports judgment in its favor as a matter of law. In *Cullinan*, a plaintiff who double paid child support each month by mistakenly continuing to issue personal checks despite the payment already being withheld from his income filed a complaint against ODJFS similar to the case at hand. There, Cullinan asserted ODJFS "has in the past, and continues to wrongfully exercise dominion over Plaintiff's personal property, namely that portion of Plaintiff's funds over collected above the court ordered child support, to the exclusion of the rights of Plaintiff" and claimed ODJFS "had absolutely no legal authority to collect double child support payments from 2004 through the first half of 2010, nor did [ODJFS] have the authority to charge an extra 2% on that amount as a processing charge." *Id.* at ¶ 16. Cullinan did not argue that ODJFS acted improperly by issuing a wage withholding order. Instead, Cullinan contended that "[n]otwithstanding the awareness by ODJFS that the double payments were being collected, ODJFS took no action to halt the double payments, impound the double payments or otherwise return the double payments to [appellant]." *Id.* at ¶ 17.

{¶ 22} In rejecting Cullinan's argument, we emphasized that R.C. 3121.50 requires " '[o]n receipt of *any amount* forwarded from a payor,' ODJFS must distribute such payments within 'two business days of its receipt,' " and Cullinan failed to demonstrate that ODJFS is permitted or required to impound funds "whenever an obligor overpays his or her support obligation." (Emphasis sic.) *Id.* at ¶ 23, quoting R.C. 3121.50. We discussed the processes of recovering overpayments on commencement of termination of the child support order provided by the Ohio Administrative Code, by a court order, or through a private agreement between the parties. *Id.* at ¶ 20-25.

{¶ 23} In this case, it is undisputed the child support order itself was correct, and appellant's employer ultimately withheld an amount from appellant's paycheck based on a 24-week, rather than 26-week, pay cycle. No record evidence shows ODJFS was responsible for the calculation error. The error led the employer to withhold $345.86 per paycheck, instead of the court-ordered $319.26 amount, from January 2008 until April 2012. The amount withheld from appellant's paycheck was disbursed to appellant's ex-wife, less a processing fee that was calculated based on the correct court-ordered amount. Appellant contends he contacted FCCSEA about the error in April and May 2008 and also contacted a human resources manager at his place of employment, who told him she was unable to change the withholding amount. The error in the withholding amount was corrected in April 2012 after an FCCSEA officer contacted appellant's employer and instructed a payroll employee as to how to calculate the correct amount based on the court order. As a result of the error in the withholding amount in his paychecks, appellant has a "futures balance" of $3,603.75 in child support. (Hills Dep. at 32.)

{¶ 24} Here, like in *Cullinan*, appellant fails to cite to any statute or code provision that demonstrates ODJFS had a duty to refuse to collect and remit the overpayments. Contrary to appellant's contentions, R.C. 3121.50 requires " '[o]n receipt of *any amount* forwarded from a payor,' ODJFS must distribute such payments within 'two business days of its receipt.' " (Emphasis sic.) *Id.* at ¶ 23, quoting R.C. 3121.50. The administrative scheme treats child support collected in excess of the current obligation as "futures" and provides processes to recover overpaid funds, such as recoupment, impoundment, and state tax refund offsets within proceedings to terminate the support order. Ohio Adm.Code 5101:12-80-10(B)(8), 5101:12-80-05.6(A)(2) and (B), 5101:12-60-50.1, 5101:12-50-20.3; *Cullinan* at ¶ 19-25. ODJFS also provided evidence that an obligor can seek an order modification from the court to address a futures balance. (Hills Dep. at 83-84.) *See also Cullinan* at ¶ 25. Furthermore, we note that under Ohio Adm.Code 5101:12-80-05.6(C), when an erroneous payment is the result of a remitter error, a definition which includes "any entity or individual (e.g., obligor, obligee, employer, financial institution, third party)" that submits a payment to the child support agency, the remitter is responsible for resolving the error. Ohio Adm.Code 5101:12-80-05(C)(10).

{¶ 25} Considering all the above, we find on independent review and viewing the evidence most strongly in favor of appellant that no evidence shows ODJFS acted in violation of a duty or otherwise acted wrongfully in collecting and remitting the child support payments in this case. Therefore, we find no genuine issue of material fact remains to be litigated, and ODJFS is entitled to judgment as a matter of law. *Cullinan* at ¶ 27, 30; *Harless*, 54 Ohio St.2d at 66. As a result, we find the trial court did not err in granting summary judgment in favor of ODJFS. *Cullinan* at ¶ 30.

{¶ 26} Accordingly, appellant's third assignment of error is overruled.

### C. Appellant's Second Assignment of Error

{¶ 27} In his second assignment of error, appellant contends the trial court erred in denying his motion for summary judgment. We disagree.

{¶ 28} Appellant argues the facts uncontrovertibly establish that ODJFS collected an amount in excess of the court-ordered child support amount from appellant's paycheck that it never had a right to take and transferred those funds to his ex-wife over four years. According to appellant, this establishes ODJFS converted funds excessively garnished from his wages without permission or consent. Appellant additionally contends ODJFS's collection of funds in an amount exceeding the order was wrongful under *Santos*, 2004-Ohio-28.

{¶ 29} We initially note appellant has not provided authority that collecting payments in excess of the court-ordered child support amount and providing those funds to the obligee is a wrongful act under the statutory and administrative scheme. Therefore, appellant has not met his burden of demonstrating error on appeal. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34, citing App.R. 16(A)(7) and 12(A)(2) ("An appellant must support their assignments of error with an argument, which includes citation to legal authority."); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 30} Regardless, appellant's assignment of error lacks merit. As provided in addressing the third assignment of error, ODJFS is required to distribute "any amount" within two business days of its receipt. *Cullinan* at ¶ 23; R.C. 3121.50. Under Ohio law,

payments in excess of the court-ordered child support payment amount are treated as "future" payments, subject to recovery at a later time.  (Hills Dep. at 83-84.)   Ohio Adm.Code 5101:12-80-10(B)(8), 5101:12-80-05.6(A)(2) and (B), 5101:12-60-50.1, 5101:12-50-20.3; *Cullinan* at ¶ 19-25.

{¶ 31} Considering all the above, we find appellant did not meet his burden in moving for summary judgment pursuant to Civ.R. 56(C).  *Harless* at 66.  As a result, we find the trial court did not err in denying summary judgment in favor of appellant.

{¶ 32} Accordingly, appellant's second assignment of error is overruled.

## V.  CONCLUSION

{¶ 33} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

_____