[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, Slip Opinion No. 2021-Ohio-673.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-673

THE STATE EX REL. FIRE ROCK, LTD., *v.* OHIO DEPARTMENT OF COMMERCE ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, Slip Opinion No. 2021-Ohio-673.]**

*Mandamus—Ohio Adm.Code 3796:2-1-09 does not prohibit a medical-marijuana cultivator from submitting on its own initiative an application to expand its cultivation area—Department of Commerce had a clear legal duty to either approve or deny cultivator's application—Peremptory writ granted.*

(No. 2020-1147—Submitted January 26, 2021—Decided March 11, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Fire Rock, Ltd., requests a writ of mandamus compelling respondents, the Ohio Department of Commerce and the Ohio Medical Marijuana Control Program (collectively, "the department"), to approve or deny its application

to expand its marijuana-cultivation area.[1]  Fire Rock argues that the department may not, as it has done here, take no action on its application.  Rather, Fire Rock says, under Ohio Adm.Code 3796:2-1-09, the department must either approve or deny the application.  We agree.  Accordingly, for the reasons that follow, we grant a peremptory writ of mandamus and deny the department's motion for judgment on the pleadings.

## I.  FACTUAL BACKGROUND

{¶ 2} Fire Rock is a Level II medical-marijuana cultivator, meaning that it is licensed to operate a cultivation area of up to 3,000 square feet.  *See* Ohio Adm.Code 3796:1-1-01(A)(24).  On February 1, 2020, Fire Rock submitted to the department an application requesting approval to expand its Akron-based cultivation facility.  Fire Rock explained in the application that it lacked the means to produce enough product to meet customer demand.  The application included, among other things, a floor plan, a proposed construction timeline, and actual and projected sales data.  Also included were several letters from representatives of dispensaries that purchase marijuana from Fire Rock urging the department to grant the application.

{¶ 3} On June 15, 2020, Fire Rock followed up with the department on the status of its application, requesting that the department respond to it.  The department responded by letter on June 24, 2020, explaining that because it had not solicited cultivation-area-expansion requests, it was "taking no action on [Fire Rock's] expansion request."  Less than a month later, Fire Rock reached out again to the department, this time "demanding a definitive decision" on its application.  The allegations and attachments to Fire Rock's complaint do not indicate whether the department responded to Fire Rock's demand.

---

1.  R.C. 3796.02 "established a medical marijuana control program in the department of commerce and the state board of pharmacy" and provides that "[t]he department and board shall administer the program."

{¶ 4} On September 24, 2020, Fire Rock filed in this court a complaint for a writ of mandamus ordering the department to approve or deny its application. The department has filed an answer and a motion for judgment on the pleadings.

## II. ANALYSIS

{¶ 5} A writ of mandamus will issue when a relator establishes a clear legal right to the requested relief, a clear legal duty on the part of the respondent to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. An administrative rule adopted pursuant to legislative authority may provide the basis for a clear legal duty and a clear legal right in a mandamus case. *See State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18.

{¶ 6} A motion for judgment on the pleadings "permits consideration of the complaint and answer." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). A court should grant the motion and dismiss the complaint when it determines that "no material factual issues exist and that the movant is entitled to judgment as a matter of law." *Id.* at 570.

{¶ 7} The questions presented here are purely legal; no material factual issues are in dispute.

### A. *Ohio law does not prohibit a cultivator from submitting an expansion application on its own initiative*

{¶ 8} Before turning to consider the elements of Fire Rock's mandamus claim, we begin by addressing a preliminary question—namely, whether, as the department argues, Ohio law prohibits a cultivator, like Fire Rock, from submitting an expansion application on its own initiative. To do this, we consider the statutes and rules that underlie Ohio's medical-marijuana scheme.

{¶ 9} Ohio law empowers the department to issue licenses to entities seeking to cultivate, process, or conduct testing on medical marijuana. R.C.

3796.09(A) and (B).  It also empowers the department to adopt rules establishing standards and procedures related to the administration of Ohio's medical-marijuana laws.  R.C. 3796.03(A)(1) and (2).  One such rule lies at the heart of this case: Ohio Adm.Code 3796:2-1-09.

{¶ 10} Under the rule, the department's "director or the director's designee, at his or her discretion, may approve a marijuana cultivation area expansion of an existing cultivator's facility" not to exceed specified square-footage limits.  Ohio Adm.Code 3796:2-1-09(A).  In exercising this discretion, the director or director's designee must consider, among other things, "cultivator compliance with licensure requirements."  *Id.*  "A cultivator seeking to expand its marijuana cultivation area" must submit an application to the department.  Ohio Adm.Code 3796:2-1-09(B).  After the department receives a cultivator's application, it "shall have a reasonable time to review and approve or deny" it.  Ohio Adm.Code 3796:2-1-09(C).

{¶ 11} "[T]he director may request expansion plans from existing cultivators" as prescribed by divisions (B) and (C) of the rule.  Ohio Adm.Code 3796:2-1-09(D).  In doing so, the director or the director's designee must first "determine[] that additional cultivation capacity is necessary to meet * * * demand," and that determination must be "based on the population of this state, number of patients seeking to use medical marijuana, and data from the inventory tracking system regarding patient recommendations and patient usage."  *Id.*

{¶ 12} The department points to division (D), arguing that its terms and the backdrop of Ohio Adm.Code 3796:2-1-09 as a whole unambiguously conveys that the department must approve or deny an expansion application only when the cultivator has submitted the application in response to the director's request.  Because the director did not request an application from Fire Rock, the department argues, no action is required.  The department argues as a fallback that if the text of the rule is deemed ambiguous, then its interpretation of the rule should prevail under principles of administrative deference.  The department also makes a general

4

appeal to the department's broad discretionary authority under R.C. Chapter 3796, asserting that that authority weighs in favor of denying the writ.

{¶ 13} Although this case involves the interpretation of a rule rather than a statute, this court's statutory-interpretation principles apply just the same. *See In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 19. The starting point for determining a rule's meaning is its text, *see Spencer v. Freight Handlers, Inc.*, 131 Ohio St.3d 316, 2012-Ohio-880, 964 N.E.2d 1030, ¶ 16, which must be understood in its context, according to the rules of grammar and common usage, *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. An unambiguous text must be applied according to its terms, without adding or subtracting words. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14.

{¶ 14} The department's argument does not square with the text of Ohio Adm.Code 3796:2-1-09. Division (A) of the rule provides that approval by the director or director's designee of a Level II cultivator's expansion application shall be "based on cultivator compliance with licensure requirements" and other program factors. Ohio Adm.Code 3796:2-1-09(A). Yet nothing in division (A) says that approval must follow a department-initiated request for an expansion application.

{¶ 15} Division (B) details what a "cultivator seeking to expand its marijuana cultivation area" must do in preparing its expansion application for submission. Ohio Adm.Code 3796:2-1-09(B). Importantly, however, division (B)'s terms do not condition a cultivator's ability to apply for an expansion on having received a request from the director.

{¶ 16} Division (C) provides that "a cultivator shall not submit a request for expansion more than once during any twelve-month period." Ohio Adm.Code 3796:2-1-09(C). But although division (C) limits how often a cultivator may submit an expansion application, it does not prohibit a cultivator from submitting an application on its own initiative.

{¶ 17} The department gets no traction from division (D) either. It provides that "the director *may* request expansion plans" from an existing cultivator. (Emphasis added.) Ohio Adm.Code 3796:2-1-09(D). The word "may" implies that the rule confers on the director a permissive power to request an expansion application. *See Fayetteville Tel. Co. v. Pub. Util. Comm.*, 1 Ohio St.3d 167, 170, 438 N.E.2d 128 (1982), fn. 8 ("The use of the word 'may' instead of 'shall' implies permissive rather than mandatory"); *State ex rel. Niles v. Bernard*, 53 Ohio St.2d 31, 34, 372 N.E.2d 339 (1978) ("usage of the term 'may' is generally construed to render optional, permissive, or discretionary the provision in which it is embodied"). We thus read division (D) as authorizing the director to request an expansion application from a cultivator if he or she so chooses; it does not prohibit a cultivator from submitting an expansion application on its own initiative.

{¶ 18} Principles of administrative deference do not require a different result. Under our caselaw, administrative deference has no place in the face of an unambiguous text. *See Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 29. And here, the text of Ohio Adm.Code 3796:2-1-09, read as a whole, unambiguously forecloses the department's reading that the department need approve or deny a cultivator's expansion application only if the department has requested it.

{¶ 19} The department's argument that it should prevail based on the degree of control that it exercises over the medical-marijuana program is no more persuasive. First, no matter how much control the department may exercise over the program, that cannot overcome the plain text of the rule. *See Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973) (observing that the "interpretative effort is at an end" when the text "conveys a meaning which is clear, unequivocal and definite"). Second, allowing Fire Rock to submit an expansion application on its own initiative will not, as the department seems to suggest, wrest control away from the department in supervising the program, for the director

retains "discretion" to approve the application under Ohio Adm.Code 3796:2-1-09(A).

*B. Fire Rock's clear legal right and the department's clear legal duty*

{¶ 20} Having decided that Ohio Adm.Code 3796:2-1-09 does not prohibit a cultivator such as Fire Rock from submitting an expansion application on its own initiative, we next must determine whether the department has a clear legal duty to act on Fire Rock's application and whether Fire Rock has a clear legal right to that relief.

{¶ 21} Ohio Adm.Code 3796:2-1-09(C) provides that "[u]pon the department's receipt of a request for expansion, the department shall have a reasonable time to review and approve or deny a request for expansion." This language unambiguously imposes a clear legal duty on the department to take one of two actions upon receiving an expansion application: approve or deny it. We conclude that Fire Rock has established a clear legal right to this relief, because the department does not deny receiving Fire Rock's application and does not argue that a reasonable time has yet to elapse. Indeed, the department expressly told Fire Rock that it was "taking no action" on its application.

*C. Fire Rock lacks an adequate remedy at law*

{¶ 22} Finally, we conclude that Fire Rock lacks an adequate legal remedy. First, the department does not argue that Fire Rock has an adequate legal remedy that would preclude extraordinary relief in mandamus. Second, Ohio Adm.Code 3796:2-1-09 does not specify the availability of any further administrative proceedings by which Fire Rock could compel the department to act on its application. *See State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, 902 N.E.2d 953, ¶ 26 (holding that the relator had an adequate remedy at law by way of available administrative proceedings before the agency). And third, although Ohio law generally grants any party adversely affected by any order of an agency the right of appeal to a court of common pleas,

*see* R.C. 119.12(A) and (B), no such order exists here, for the department has failed to issue an order disposing of Fire Rock's application.

### D. Peremptory writ

{¶ 23} In light of the preceding analysis, we must deny the department's motion for judgment on the pleadings, for its argument rests on a flawed legal theory. *See Midwest Pride IV*, 75 Ohio St.3d at 570, 664 N.E.2d 931 ("Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law"). And because an alternative writ ordering the submission of evidence and briefing would not aid in our disposition of this case, we grant Fire Rock's request for relief based on the reasons set forth above and issue a peremptory writ of mandamus ordering the department to approve or deny Fire Rock's application. *See* S.Ct.Prac.R. 12.04(C) ("After the time for filing an answer to the complaint or a motion to dismiss, the Supreme Court will dismiss the case; issue an alternative or a peremptory writ, if a writ has not already been issued; or deny the request for the writ").

### III. CONCLUSION

{¶ 24} For the foregoing reasons, we deny the department's motion for judgment on the pleadings and grant a peremptory writ of mandamus.

Motion denied

and peremptory writ granted.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., not participating.

———————————

Lagos & Lagos, P.L.L., and Argeri A. Lagos, for relator.

Dave Yost, Attorney General, and Christie Limbert, Assistant Attorney General, for respondents.

———————————