**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Thomas v. Logue,* **Slip Opinion No. 2023-Ohio-3522.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3522

THOMAS, APPELLEE, *v.* LOGUE, ADMR., OHIO BUREAU OF WORKERS' COMPENSATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Thomas v. Logue,* Slip Opinion No. 2023-Ohio-3522.]**

*Workers' compensation—Subrogation—R.C. 4123.93(D)—Costs expended by Bureau of Workers' Compensation for a medical review that is used to deny a workers' compensation claimant's application for workers' compensation benefits are not recoverable in subrogation from an award workers' compensation claimant receives from a third-party tortfeasor for the same injury, because the costs expended for the medical review were not paid "on behalf of the claimant" under R.C. 4123.93(D)—Court of appeals' judgment affirmed and cause remanded to Court of Claims.*

(No. 2022-0787—Submitted May 16, 2023—Decided October 3, 2023.)

APPEAL from the Court of Appeals for Franklin County, No. 21AP-385, 2022-Ohio-1603.

_____

**BRUNNER, J.**

## INTRODUCTION

**{¶ 1}** Appellee, Lamar Thomas, was working in waste management when he was injured in a vehicle collision caused by a third party. The Bureau of Workers' Compensation ("BWC") allowed his workers' compensation claim for some conditions, but when Thomas's treating physician linked other conditions to the workplace accident and Thomas asserted a claim for those conditions, the BWC sought and paid for a medical review. On the basis of the second opinion rendered during the medical review, the BWC challenged, and the Industrial Commission ultimately disallowed, the additional claim. Then, when Thomas settled his personal-injury case against the third-party tortfeasor, the BWC recouped through subrogation the cost of the medical review it had used to deny Thomas's additional workers' compensation claim. Thomas sued appellant, John Logue, administrator of the BWC, in the Ohio Court of Claims, seeking to recover the portion of the BWC's subrogated award relating to its medical review. His case against the BWC in the Court of Claims was denied via judgment on the pleadings, and Thomas appealed. The Tenth District Court of Appeals reversed the Court of Claims' decision, and we accepted jurisdiction over the BWC's appeal to determine whether the medical review it obtained was an expense recoverable in subrogation. We agree with the Tenth District in concluding that it was not; thus, we affirm the court of appeals' judgment and remand this cause to the Court of Claims for further proceedings.

## FACTS AND PROCEDURAL HISTORY

**{¶ 2}** According to the allegations in his complaint against the BWC, Thomas was an employee of a waste-management company when he was injured in the course of his employment in a vehicle collision caused by a third party. The BWC allowed Thomas's initial claim for workers' compensation coverage. However, based on a causal-relation opinion from his treating physician, Thomas

sought additional workers' compensation coverage, claiming that his allowed conditions aggravated his preexisting degenerative-disc disease and spondylolisthesis. Rather than allow the additional claim based on the opinion of the treating physician, the BWC hired Dr. Gerald Yosowitz to review Thomas's medical records. In his report, Dr. Yosowitz opined that the conditions for which Thomas sought additional workers' compensation coverage were degenerative and unrelated to the injury he had sustained in the vehicle collision. The BWC used this report to successfully argue against Thomas's additional claim with the result that it was disallowed.

{¶ 3} When Thomas pursued a personal-injury claim against the third-party tortfeasor, the BWC asserted a right of subrogation. Following Thomas's settlement with and recovery from the third party, the BWC made its claim for and obtained subrogation. The subrogated amount sought and obtained by the BWC from Thomas's tort-action recovery included the fees it had paid to Dr. Yosowitz for the medical review that it had used to dispute the opinion by Thomas's treating physician, which resulted in the Industrial Commission's disallowing Thomas's additional claim. Thomas took the position that according to the law and multiple publications of the BWC and the Industrial Commission, the BWC's subrogation interest extends only to costs that the BWC incurred on behalf of the injured worker. He asserted that costs incurred by the BWC to dispute his additional workers' compensation claim were not incurred on his behalf and therefore were not recoverable through subrogation.

{¶ 4} Thomas subsequently filed a class-action lawsuit against the BWC in the Ohio Court of Claims. He sought a declaration that the subrogation-recovery practices described in his case (and common to the alleged class) are unlawful; he alleged that the practices unjustly enriched the BWC, that they violated equal protection, and that he was therefore entitled to restitution and injunctive relief.

**{¶ 5}** The BWC moved for judgment on the pleadings, arguing that the costs and expenses it incurs in connection with a medical review are incurred "on behalf of" the workers' compensation claimant and are therefore included in the definition of "subrogation interest" under R.C. 4123.93(D). In support of this view, the BWC asserted in its motion that

> the text of R.C. 4123.93(D) provides that BWC's subrogation interest "includes past, present, and estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, ***and _any other costs or expenses_ paid to or on behalf of the claimant*** by the statutory subrogee pursuant to this chapter or Chapter 4121., 4127., or 4131. of the Revised Code."

(Emphasis, boldface, and underlining added by the BWC.) The BWC argued that Dr. Yosowitz's independent medical review was necessary "to evaluate whether Thomas was entitled to participate in the workers' compensation fund for the additional allowances" and consequently, that its cost was expended on Thomas's behalf, notwithstanding the fact that its conclusions were, in the end, not beneficial to his claim. In response, Thomas pointed out that the medical review was neither treatment nor care provided to him, that it was performed at the request of the BWC to defend against his claim for additional workers' compensation allowances, and that it was not an expense that he had claimed or recovered in his action against the third-party tortfeasor.

**{¶ 6}** The Court of Claims granted the BWC's motion for judgment on the pleadings. It reasoned:

> When the terms "costs or expenses" and "on behalf of" in R.C. 4123.93(D) are considered according to the rules of grammar

4

and common usage, the Court determines that these terms pertain to an amount paid by BWC or expenditure paid by BWC in the name of, on the part of, or as the agent or representative of a claimant. In the Court's view, the costs and expenses incurred by BWC in connection with an injured worker's medical review—in this case Lamar Thomas—are included within the statutory definition of "subrogation interest" under R.C. 4123.93(D) because it is an expenditure paid by BWC on the part of a claimant.

*Thomas v. Ohio Bur. of Workers' Comp.*, Ct. of Cl. No. 2021-00112JD, 2021 WL 3124286, *4 (June 28, 2021).[1]

{¶ 7} The Tenth District reversed the Court of Claims, finding that the medical review was not conducted "on behalf of" Thomas and therefore was not an expense for subrogation purposes. 2022-Ohio-1603, 191 N.E.3d 1155, ¶ 11-30. The appellate court reasoned:

BWC states that in ordering Dr. Yosowitz's record review and report, it was acting "to *determine* the *propriety* of [Thomas's] request." (Emphasis added.) (BWC's Brief at 24.) BWC states that Dr. Yosowitz's medical review "was necessary to *evaluate* whether [Thomas] was entitled to participate in the workers' compensation

---

1. The Court of Claims also noted that both the Cuyahoga County and Franklin County Courts of Common Pleas had declined to grant the BWC's motions for judgment on the pleadings in a prior class-action lawsuit filed by Thomas on the subrogation issue. *See Thomas v. Buehrer*, Cuyahoga C.P. No. CV-16-859245 (Mar. 23, 2017), *id.*, Cuyahoga C.P. No. CV-16-859245 (Sept. 13, 2018) (transferring venue to Franklin County), and *Thomas v. Morrison*, Franklin C.P. No. 18 CV 8643 (Jan. 31, 2019). The parties stipulated to a voluntary dismissal of that action before a decision was rendered on the merits, s*ee Thomas v. McCloud*, Franklin C.P. No. 18 CV 8643 (Mar. 18, 2020). Thomas subsequently initiated this suit in the Court of Claims.

fund for the additional allowances." (Emphasis added.) (BWC's Brief at 22.) In order "[t]o assist in this *determination*," BWC relied on its authority under Ohio Adm.Code 4123-3-09(C)(4) to " 'at any point in the *processing* of an application for benefits, *require* the employee to submit to a physical examination or * * * refer a claim for investigation.' " (Emphasis added.) (BWC's Brief at 22, quoting Ohio Adm.Code 4123-3-09(C)(4).) *See* R.C. 4123.53(A) (providing that BWC "may require any employee claiming the right to receive compensation to submit to a medical examination"). By these statements, it is clear that BWC was not ordering the record review in the interest of or as the representative of [Thomas], but, rather, to fulfill its ministerial purpose of administering the workers' compensation system. *See State ex rel. Crabtree v. Bur. of Workers' Comp.*, 71 Ohio St.3d 504, 507, 1994-Ohio-474, 644 N.E.2d 361 (1994) (stating that the statutory framework of Ohio's workers' compensation system "consistently reflected" that the BWC's "role is ministerial"); *Greene v. Conrad*, 10th Dist. No. 96APE12-1780 (Aug. 21, 1997); *Broyles v. Conrad*, 2d Dist. No. 20670, 2005-Ohio-2233, ¶ 12. *See also Willitzer v. McCloud*, 6 Ohio St.3d 447, 449, 6 [OBR] 489, 453 N.E.2d 693 (1983) (stating, under a prior version of workers' compensation scheme that an independent physician examining workers' compensation claimants, at the request of the commission for the purpose of reporting their medical conditions was performing an "investigative-medical fact-finding function").

BWC states that its "mission" is "to ensure that a claimant is fully and fairly compensated to the extent he or she is entitled to be—*no more and no less*." (Emphasis sic.) (BWC's Brief at 27.) Citing another provision of Ohio's workers' compensation statutes,

BWC acknowledges that its "role" in this process is to serve "as steward and fiduciary of the State Insurance Fund." (BWC's Brief at 25, citing R.C. 4123.32(B).) *See State ex rel. Daily Servs., L.L.C. v. Morrison*, 154 Ohio St.3d 498, 2018-Ohio-2151, 116 N.E.3d 112, ¶ 25 (stating that BWC "has a fiduciary responsibility to safeguard the Workers' Compensation Fund"); *State ex rel. Harry Wolsky Stair Builder, Inc. v. Indus. Comm.*, 58 Ohio St.3d 222, 224, 569 N.E.2d 900 (1991) (stating that BWC's "sole fiduciary responsibility is to the State Insurance Fund"). Contrary to BWC's contentions, these statements of its purpose do not demonstrate that BWC is acting as the representative of or in the interest of claimants. Instead, they provide more support for BWC's ministerial role in fairly administering the claims presented to it by claimants.

2022-Ohio-1603 at ¶ 19-20.

{¶ 8} The BWC appealed, and we accepted a single proposition of law for review:

> The cost of an independent medical review, which the [BWC] pays in order to complete the record, is a cost paid "on behalf of the claimant" and thus subject to subrogation.

*See* 168 Ohio St.3d 1414, 2022-Ohio-3636, 196 N.E.3d 846.

**DISCUSSION**

{¶ 9} Our review of a lower court's decision granting judgment on the pleadings under Civ.R. 12(C) is de novo. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8. Granting judgment on the pleadings, especially when

filed by a defendant, generally results in dismissal. *See, e.g.*, *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, 163 Ohio St.3d 277, 2021-Ohio-673, 169 N.E.3d 665, ¶ 6, quoting *State ex. rel. Midwest Pride, IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996) ("A court should grant the motion [for judgment on the pleadings] and dismiss the complaint when it determines that 'no material factual issues exist and that the movant is entitled to judgment as a matter of law' "); *State ex rel. Mancino v. Tuscarawas Cty. Ct. of Common Pleas*, 151 Ohio St.3d 35, 2017-Ohio-7528, 85 N.E.3d 713, ¶ 8, fn. 2 (a lower court's ruling on a motion to dismiss filed after the complaint and answer were filed is properly viewed as a ruling on a motion for judgment on the pleadings under Civ.R. 12(C)).

> "Dismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief."

*Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, ¶ 13, quoting *Reister v. Gardner*, 164 Ohio St.3d 546, 2020-Ohio-5484, 174 N.E.3d 713, ¶ 17, citing *Pontious* at 570.

{¶ 10} As both parties in this case observe, the workers' compensation scheme enacted in R.C. Chapter 4123 is a grand bargain between workers (who need to be compensated for their injuries with a minimum of fuss) and employers (who would prefer not to be subjected to the difficulties of trial and the danger of unpredictable jury awards). *See* Ohio Constitution, Article II, Section 35; R.C. 4123.54 and 4123.74; *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 119, 748

N.E.2d 1111 (2001). The statutory scheme also makes clear who bears the burden of maintaining the administrative structure of the workers' compensation program:

> The administrative costs of the industrial commission, the bureau of workers' compensation board of directors, and the bureau of workers' compensation shall be those costs and expenses that are incident to the discharge of the duties and performance of the activities of the industrial commission, the board, and the [BWC] under * * * Chapters 4121., [4123.,] 4125., 4127., 4133., and 4167. of the Revised Code, and all such costs shall be borne by the state and by other employers amenable to [R.C. Chapter 4123] * * *.

R.C. 4123.341; *see also* R.C. 4123.342; *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 4, quoting R.C. 4123.341 (noting, in case in which fees were assessed against claimants accessing workers' compensation funds with debit cards, that the BWC "is required to ensure that all 'administrative costs'—that is, all costs that are 'incident to the discharge of the duties and performance of the activities of the * * * [BWC]'—are borne by the state and employers" [ellipsis added in *Cirino*]). It is likewise clear that when an injured worker makes a claim and the employer or the BWC has doubts about the claim, the employee may be required to submit to examinations regarding the employee's health and ability to work. *See* R.C. 4123.53 and 4123.651. In the case of BWC-initiated examinations, the BWC must pay the cost of the examination. R.C. 4123.53(A). In the case of employer-initiated examinations, the employer must pay for the examination. R.C. 4123.651(A). Were it not for the question of subrogation, the cost of Dr. Yosowitz's medical review would clearly have been required to be borne by the BWC.

{¶ 11} R.C. 4123.931(A) provides BWC's right to subrogation:

> The payment of compensation or benefits pursuant to * * * Chapter 4121., [4123.,] 4127., or 4131., of the Revised Code creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party. The net amount recovered is subject to a statutory subrogee's right of recovery.

The "statutory subrogee" is "the administrator of workers' compensation, a self-insuring employer, or an employer that contracts for the direct payment of medical services pursuant to division (P) of section 4121.44 of the Revised Code." R.C. 4123.93(B). In this case, the statutory subrogee is the BWC.

{¶ 12} In subrogation cases such as this, in which the injured worker's personal-injury claim against a third-party tortfeasor has been settled (rather than tried),

> the claimant shall receive an amount equal to the uncompensated damages divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, and the statutory subrogee shall receive an amount equal to the subrogation interest divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, except that the net amount recovered may instead be divided and paid on a more fair and reasonable basis that is agreed to by the claimant and statutory subrogee.

R.C. 4123.931(B). The "claimant" is a "person who is eligible to receive compensation, medical benefits, or death benefits under * * * Chapter 4121.,

[4123.,] 4127., or 4131. of the Revised Code," R.C. 4123.93(A), and in this case, the claimant is Thomas. " 'Uncompensated damages' means the claimant's demonstrated or proven damages minus the statutory subrogee's subrogation interest." R.C. 4123.93(F). " 'Net amount recovered' means the amount of any award, settlement, compromise, or recovery by a claimant against a third party, minus the attorney's fees, costs, or other expenses incurred by the claimant in securing the award, settlement, compromise, or recovery" but it "does not include any punitive damages." R.C. 4123.93(E). And finally, "subrogation interest" is defined as "past, present, and estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, and any other costs or expenses paid to or on behalf of the claimant by the statutory subrogee pursuant to * * * Chapter 4121., [4123.,] 4127., or 4131. of the Revised Code." R.C. 4123.93(D).

{¶ 13} Determining the amount dictated by the formula in R.C. 4123.931(B) is not possible on the record before this court, but neither is it necessary. The record before us does not include an accounting of Thomas's total recovery from his settlement with the third-party tortfeasor or the expenses he incurred in securing the settlement. What we can discern, however, from the allegations in Thomas's complaint against the BWC and the exhibits to the pleadings is that the cost of Dr. Yosowitz's medical review was included in the "subrogation interest" asserted by the BWC and recovered from Thomas's settlement. The question is whether that was permissible.

{¶ 14} The statutes set out above make clear that the answer for Thomas and those similarly situated in the alleged class is no. The payment that the BWC made to Dr. Yosowitz for providing the medical review and any other similar payment it made in relation to persons in the alleged class should not have been included in the BWC's subrogation recovery. First, examinations are generally to be paid for by the party that orders them, *see* R.C. 4123.53(A) and 4123.651(A), and there is no doubt in this case that the medical review in question was ordered

by the BWC. Taking the allegations in the complaint at face value (as we are required to do when reviewing a judgment-on-the-pleadings decision, *see Maternal Grandmother*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, at ¶ 13), we accept as true that the treating physician's report established that the workplace accident "substantially aggravated [Thomas's] pre-existing degenerative disc disease at L3-L4 and L4-L5 as well as [his] pre-existing spondylothesis [sic] at L5." There are no equivocations to or evident insufficiencies in that alleged fact, and the BWC has not pointed to any. Rather, as alleged in the complaint, the BWC was "[u]nwilling to grant the request" to allow Thomas's additional workers' compensation claim and for that reason alone, it referred the matter to Dr. Yosowitz for a medical review. In short, according to the complaint, the BWC sought a medical review before allowing the claim for Thomas's additional conditions— something it was statutorily entitled to do but for which it was also statutorily required to bear the cost. *See* R.C. 4123.53(A). The BWC now takes the position that even though the statute requires it to bear the cost of the medical review it sought with Dr. Yosowitz, R.C. 4123.931 entitles it to recoup that cost from Thomas's third-party tort-claim settlement. That is incorrect—logically, statutorily, and constitutionally.

{¶ 15} Let's get logic out of the way first. In Thomas's tort action against the third party that caused the vehicle collision, he could not have sought to recover as damages the cost of the BWC's medical review by Dr. Yosowitz. That expense was borne by the BWC in its attempt to avoid providing coverage for what it believed were preexisting conditions that were not exacerbated by the allowed injuries in Thomas's workers' compensation case. That expense was not for medical treatment, nor was it any other form of cognizable compensatory expense that Thomas could have presented in his third-party tort case to recover as damages. *See, e.g.*, *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 10 ("In order to establish an actionable claim of negligence, a

12

plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach"). Since Thomas could not have recovered for that expense from the third party, it is illogical to conclude that the amount Thomas did recover from the third party by way of settlement should be diminished by a subrogation claim for that expense.

{¶ 16} R.C. 4123.93(D) makes clear that any subrogation "includes past, present, and estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, and any other costs or expenses paid to or *on behalf of the claimant* by the statutory subrogee pursuant to * * * Chapter 4121., [4123.,] 4127., or 4131. of the Revised Code." (Emphasis added.) While payments to Dr. Yosowitz were "costs or expenses," they were not payments made "to" Thomas. Nor does logic support that the payments were made "on behalf" of Thomas. The payments were made to Dr. Yosowitz because the BWC was attempting to deny coverage for Thomas's additional workers' compensation claim. The BWC argues that Dr. Yosowitz's medical review was to fill "gaps" in Thomas's claim and could well have inured to Thomas's benefit. However, the BWC has never specified what these "gaps" were, and our standard of review leaves no room for supplying evidence for the BWC or doubting the sufficiency of Thomas's allegations as the complaining party regarding his treating physician's opinion. Moreover, the statutory scheme shows that the BWC is a steward of the workers' compensation fund. *See* R.C. 4123.32(B). As such, the BWC acts in the interest of both employers and workers when it seeks a second opinion to avoid paying for false claims. While that may remotely inure to the benefit of Thomas and similarly situated workers in the alleged class, the aim of the BWC's securing a second opinion is more so for the solvency of the workers' compensation system than for the benefit of any individual worker.

{¶ 17} The cost of Dr. Yosowitz's medical review is not contained within the statutory definition of "subrogation interest." *See* R.C. 4123.93(D). To the

extent there is any ambiguity in that conclusion, R.C. 4123.95 instructs that "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." Permitting the BWC to recoup from an employee the cost of a medical review that it sought and used to deny a claim by the employee would not be in keeping with the required "liberal" construction of the Revised Code in favor of the *employee*— to the contrary, it would be a construction in favor of employers and the BWC.

{¶ 18} Finally, we have explained that subrogation is constitutional in this context insofar as it prevents a double recovery:

> In dealing with the constitutionality of various collateral-benefits-offset statutes under Section 16, Article I [of the Ohio Constitution], this court has recognized that the state has a legitimate interest in preventing double recoveries. Thus, it is constitutionally permissible for the state to prevent a tort victim from recovering twice for the same item of loss or type of damage, once from the collateral source and again from the tortfeasor. However, we have also recognized that these kinds of statutes are not rationally related to their purpose where they operate to reduce a plaintiff's tort recovery irrespective of whether a double recovery has actually occurred. Thus, *we have consistently and repeatedly held that due process permits deductions for collateral benefits only to the extent that the loss for which the collateral benefit compensates is actually included in the award. McMullen v. Ohio State Univ. Hosp.* (2000), 88 Ohio St.3d 332, 341-344, 725 N.E.2d 1117, 1125-1127; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 479-482, 715 N.E.2d 1062, 1088-1090; *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d

260, 652 N.E.2d 952; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504.

There is no valid justification for dispensing with these principles in determining the constitutionality of R.C. 4123.931. Like the collateral-benefits-offset statutes, the subrogation statute is aimed at preventing the tort victim from keeping a double recovery, the only conceptual difference being that the intended beneficiary is the statutory subrogee (*i.e.*, the collateral payor) rather than the tortfeasor. Thus, *R.C. 4123.931 must also satisfy the constitutional requirement that deductible or, in this case, subrogable or recoupable items be matched to those losses or types of damages that the claimant actually recovered from the tortfeasor.*

We are now confronted with similar determinative issues under Sections 16 and 19, Article I of the Ohio Constitution. Whether expressed in terms of the right to private property, remedy, or due process, the claimant-plaintiff has a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the employer's or [BWC's] compensation outlay. Thus, if R.C. 4123.931 operates to take more of the claimant's tort recovery than is duplicative of the statutory subrogee's workers' compensation expenditures, then it is at once unreasonable, oppressive upon the claimant, partial, and unrelated to its own purpose.

(Emphasis added.) *Holeton*, 92 Ohio St.3d at 121-122, 748 N.E.2d 111; *see also Groch v. GMC*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 39, 77-80 (adhering to the double-recovery principle set forth in *Holeton* but noting that in cases in which a tort recovery undercompensates the injured worker, both the BWC

and the injured worker share the burden of the undercompensation). In short, the BWC's subrogation rights do not extend to expenses it incurred for things like the medical review that it obtained from Dr. Yosowitz—i.e., expenses that were not recoverable by Thomas from the third-party tortfeasor.

## CONCLUSION

{¶ 19} Dr. Yosowitz's medical review was not obtained on behalf of Thomas or for his benefit but as a second opinion whether Thomas's workplace accident aggravated his preexisting degenerative-spine conditions. While obtaining that review may have been a reasonable thing for the BWC to have done to protect the solvency of the workers' compensation system, it was plainly, under the allegations in the pleadings, not done for Thomas's benefit or on his behalf. Moreover, the cost of that medical review was not recoverable by Thomas in his personal-injury claim against the third-party tortfeasor. Thus, in shifting the cost of the medical review to Thomas through subrogation, the BWC has attempted to avoid responsibility for the costs statutorily assigned to it—costs that were not paid for the benefit of or on behalf of a claimant and which the claimant could not have recovered from the third-party tortfeasor. The BWC's attempted expansion of subrogation in this context is unlawful.

{¶ 20} We therefore affirm the Tenth District Court of Appeals' judgment and remand this cause to the Court of Claims for further proceedings.

Judgment affirmed

and cause remanded to the Court of Claims.

FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, C.J., dissents, with an opinion joined by DEWINE and DETERS, JJ.

———————————

**KENNEDY, C.J., dissenting.**

{¶ 21} R.C. 4123.931 gives the Bureau of Workers' Compensation ("BWC") a right of subrogation when a workers' compensation claimant receives a damages award from a third party for the same workplace injury. The subrogation amount depends in part on the amount of the "subrogation interest," which R.C. 4123.93(D) defines as "includ[ing] past, present, and estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, and any other costs or expenses paid to or on behalf of the claimant by the statutory subrogee."

{¶ 22} We are asked to decide whether the costs incurred by the BWC for an independent medical review to evaluate a claimant's entitlement to additional workers' compensation benefits are paid *on behalf of* the claimant. Under the plain language of R.C. 4123.93(D), they are. For this reason, I dissent and would reverse the judgment of the Tenth District Court of Appeals.

{¶ 23} In appellee Lamar Thomas's complaint against appellant, John Logue, administrator of the BWC, Thomas alleged that he was injured in the course and scope of his employment when he was involved in an automobile accident caused by the negligence of a third party. The BWC allowed Thomas's initial claim for workers' compensation benefits, but he subsequently sought additional compensation for the aggravation of a preexisting injury. According to Thomas, the BWC was "[u]nwilling" to allow the additional claim, and it ordered an independent medical review. The physician who performed the independent medical review determined that the workplace injury had not aggravated Thomas's preexisting condition. Based on the independent medical review, the Industrial Commission denied Thomas the additional compensation that he sought.

{¶ 24} In the meantime, Thomas sued the third-party tortfeasor who precipitated the automobile accident in which he had been injured. After Thomas settled his lawsuit against the third-party tortfeasor, the BWC asserted its

subrogation interest, which included the costs it had paid for the independent medical review.

{¶ 25} Thomas brought this putative class action in the Court of Claims on behalf of himself and similarly situated claimants, alleging that the BWC has been unjustly enriched when it recovered through subrogation the costs of independent medical reviews that it has obtained in workers' compensation cases. The Court of Claims granted the BWC's motion for judgment on the pleadings, but the Tenth District reversed, holding that Thomas had stated a claim for unjust enrichment because the cost of the independent medical review that the BWC had obtained in Thomas's workers' compensation case was not incurred on behalf of Thomas but rather was an administrative cost that R.C. 4123.341 requires the BWC to bear. 2022-Ohio-1603, 191 N.E.3d 1155, ¶ 24, 28-29.

{¶ 26} Our review of the court of appeals' decision involves a question of statutory interpretation, so our review is de novo. *See Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

{¶ 27} The phrase "on behalf of" is not defined by R.C. 4123.93. "When a term is undefined, we give the term its 'plain and ordinary meaning.'" *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8, quoting *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17. The plain and ordinary meaning of "on behalf of" is "in the

interest of : as the representative of : for the benefit of." *Webster's Third New International Dictionary* 198 (1993).

{¶ 28} By Thomas's own admission, the BWC was "[u]nwilling" to allow his additional workers' compensation claim, notwithstanding his attending physician's opinion that the workplace injury aggravated a preexisting condition. But rather than deny Thomas's additional claim outright under Ohio Amin.Code 4123-3-09(B), the BWC spent money on an independent medical review. By having his medical file reviewed by an independent physician, Thomas received a second chance to persuade the BWC that the workplace injury did in fact aggravate his preexisting condition and support his claim for additional compensation. Because the BWC was unwilling to grant Thomas additional benefits without the independent medical review, that review could only benefit him. The BWC's payment for the independent medical review was therefore for Thomas's benefit and in his interest, and for this reason, that cost was paid "on behalf of" Thomas.

{¶ 29} However, this class action was not brought solely in Thomas's name; it also involves the rights of other injured workers who have received independent medical reviews that were paid for by the BWC. For those claimants who have obtained a diagnosis from their attending physicians, as Thomas did in this case, an independent medical review could provide additional credible evidence supporting their claims for compensation. But as amici curiae Ohio Chamber of Commerce, Ohio Manufacturers' Association, and National Federation of Independent Business/Ohio point out, independent medical reviews are completed for "injured workers who do, or do not, have evidence relating medical conditions to a workplace injury." For some claimants, an independent medical review may furnish the only evidence proving that the workplace injury caused their losses. Without that evidence, a claim for workers' compensation benefits would be denied. *See* R.C. 4123.54(A) (allowing "compensation for loss sustained on account of the injury"). An independent medical review is plainly beneficial to

those claimants. For claimants like Thomas, whose claims are ultimately denied, they are still granted the benefit of further review.

{¶ 30} Importantly, the workers' compensation system is designed to be nonadversarial. *See State ex rel. Ohio AFL-CIO v. Ohio Bur. of Workers' Comp.*, 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981, ¶ 49. The BWC's purpose in obtaining an independent medical review is not to build a record *against* the claimant; rather, its administrative rules require it to make "every effort * * * to *complete* the record," (emphasis added) Ohio Adm.Code 4123-3-09(B)(1). That is, the BWC must ensure that qualified claimants do not have their claims disallowed simply because they were unable to muster sufficient credible evidence to support their claims on initial review. Therefore, the BWC's obtaining an independent medical review is in the interest of all claimants—if the BWC does not fill in the gaps of the injured workers' claims, those claimants might not receive the medical treatment, paid time off, or other compensation and benefits that they deserve.

{¶ 31} Other provisions support the conclusion that the costs incurred by the BWC for an independent medical review may be recovered through subrogation. R.C. 4123.931(A) provides that the right of recovery through subrogation applies to compensation and benefits paid "pursuant to [R.C. Chapter 4123]," and R.C. 4123.30 permits the BWC to pay for an injured worker's "compensation, medical services, *examinations, recommendations and determinations*, nursing and hospital services, medicine, rehabilitation, death benefits, funeral expenses, and like benefits for loss sustained on account of injury, disease, or death." (Emphasis added.)

{¶ 32} Independent medical reviewers conduct an *examination* when they review an injured worker's medical records. *See Webster's Third New International Dictionary* at 790 (defining "examine" as "to inspect or test for evidence of disease or abnormality" and defining "examination" as "the act or process of examining"). And following that examination, they make a

20

*determination* whether the workplace injury caused the injured worker's condition. *See id.* at 616 (defining "determination" as "conclusion [or] decision" [capitalization deleted]).  R.C. 4123.30 therefore permits the BWC to pay the costs of an independent medical review from the state fund, and R.C. 4123.931(A) creates a right for the BWC to recover those costs from a damages award that the claimant receives from a third-party tortfeasor.

{¶ 33} Because R.C. 4123.931(A) permits the BWC to recover the costs of an independent medical review that it ordered to evaluate a claimant's application for workers' compensation benefits, the Court of Claims properly granted the BWC's motion for judgment on the pleadings.  The Tenth District Court of Appeals erred in construing the relevant statutes, and its judgment should be reversed.  The majority does not do that, so I dissent.

DEWINE and DETERS, JJ., concur in the foregoing opinion.

_____

Flowers & Grube, Paul W. Flowers, Louis E. Grube, and Melissa A. Ghrist; Garson Johnson, L.L.C, James A. DeRoche, and Jeffrey D. Johnson; Weisman, Kennedy & Berris Co., R. Eric Kennedy, and Daniel P. Goetz; Ciano Goldwasser, L.L.P., and Andrew S. Goldwasser, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Zachery P. Keller, Deputy Solicitor General, and Timothy Miller, Assistant Attorney General, for appellant.

Elk & Elk Co., Ltd., and Curtis M. Fifner, urging affirmance for amicus curiae Ohio Association for Justice.

Garvin & Hickey, L.L.C., Preston J. Garvin, Michael J. Hickey, and Nathan P. Frazen, in support of appellant, for amici curiae Ohio Chamber of Commerce and Ohio Manufacturers' Association.

Bricker & Eckler, Sue A. Roudebush, and Anne Marie Sferra, in support of appellant, for amicus curiae National Federation of Independent Business/Ohio.

_____