[Cite as *Thomas v. Ohio Bur. of Workers' Comp.*, 2026-Ohio-1352.]

IN THE COURT OF APPEALS OF OHIO

TENThH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lamar Thomas, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 25AP-89 |
| v. | : | (Ct. of Cl. No. 2021-00112JD) |
| Ohio Bureau Of Workers' Compensation | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 14, 2026

**On brief:** *Flowers & Grube*, *Paul W. Flowers*, and *Kendra N. Davitt*, for appellant. **Argued:** *Paul W. Flowers*.

**On brief:** *Brennan, Manna & Diamond, LLC, Robert A. Hager, Justin M. Alaburda,* and *Daniel J. Rudary*; *Dave Yost*, Attorney General, and *Timothy M. Miller*, for appellee. **Argued:** *Daniel J. Rudary*.

APPEAL from the Court of Claims of Ohio

BOGGS, P.J.

{¶ 1}  Plaintiff-appellant, Lamar Thomas, appeals the judgment of the Court of Claims of Ohio granting defendant-appellee, Ohio Bureau of Workers' Compensation's ("BWC") motion for summary judgment.  For the following reasons, we reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

## I.  PROCEDURAL HISTORY AND FACTS

{¶ 2}  The facts and procedural history of this case are outlined in detail in *Thomas v. Logue*, 2023-Ohio-3522, and *Thomas v. Logue*, 2022-Ohio-1603 (10th Dist.), and will not be repeated here except as relevant to the appeal before us.

{¶ 3} Thomas was injured in a car accident while working for his employer. He filed a claim for workers' compensation benefits, which was allowed by BWC for cervical and lumbar sprain. Thomas also brought a negligence action against a third party for causing the accident that resulted in his injuries. Following the settlement of his third-party claim, BWC asserted a right of subrogation in the amount of $6,044.36 pursuant to R.C. 4123.93 and 4123.931. BWC's claimed subrogation interest included $5,544.01 in medical bills and foreseeable expenses. Incorporated in the medical bills BWC sought to subrogate was a $120 fee for Dr. Gerald Yosowitz, the independent medical examiner retained by BWC to review Thomas' medical records and issue a report. Ultimately, BWC used Dr. Yosowitz's report to deny Thomas' request for additional allowances under his claim. Thomas paid BWC $6,044.36 from his third-party settlement to satisfy BWC's asserted subrogation interest.

{¶ 4} Thomas filed his original complaint in the Court of Claims arguing that BWC had no legal right to extract a subrogation payment against him that included Dr. Yosowitz's fee, and he asserted claims for equitable restitution and unjust enrichment in the amount of that fee. He further sought an order from the court to enjoin BWC from unlawful subrogation practices, and an order certifying this matter as a class action under Civ.R. 23.

{¶ 5} On June 28, 2021, the Court of Claims granted BWC's motion for judgment on the pleadings, finding that Thomas could prove no set of facts in support of his claim that would entitle him to relief. Thomas appealed to this court with one assignment of error: "The trial court erroneously interpreted 'subrogation interest' [R.C. 4123.93(D)] to include administrative costs that neither the injured worker nor the statutory subrogee could recover from a liable third party." *Thomas*, 2022-Ohio-1603, at ¶ 7 (10th Dist.). On May 12, 2022 we sustained Thomas' sole assignment of error, finding that Dr. Yosowitz's medical review was not conducted on behalf of Thomas and therefore was not included in BWC's subrogation interest. *Id*. at ¶ 24. We, therefore, remanded the matter back to the Court of Claims.

{¶ 6} BWC appealed this court's decision to the Supreme Court of Ohio. On October 3, 2023, the Supreme Court affirmed our decision, finding that while it was lawful for BWC to seek a medical review before allowing Thomas' additional conditions, "it [BWC] was statutorily required to bear the cost" pursuant to R.C. 4123.53(A). *Thomas*, 2023-

Ohio-3522, at ¶ 14. Therefore, the Supreme Court held that BWC's attempted expansion of subrogation was an unlawful attempt to avoid the financial responsibility of costs statutorily assigned to BWC. *Id*. at ¶ 19. The Supreme Court remanded the matter to the Court of Claims.

{¶ 7} On remand, Thomas and BWC filed competing motions for summary judgment that the trial court considered jointly. BWC contended that it was entitled to summary judgment on Counts 1 through 4 of Thomas' complaint, while Thomas limited his motion for summary judgment to his claims for declaratory and injunctive relief found in Counts 1 and 4 of his complaint.

{¶ 8} BWC argued that, pursuant to doctrines of (1) settlement and release, and (2) accord and satisfaction, the parties' settlement agreement, executed when Thomas paid BWC's claim for subrogation, bars Thomas' individual claims for relief. While BWC acknowledged that the Supreme Court declared it unlawful pursuant to R.C. 4123.93 and 4123.931 for BWC to include medical-review costs in subrogation demands, it submitted to the trial court that Supreme Court's decision did not impact the parties' contractual rights under the plain language of their May 12, 2015 settlement agreement.

{¶ 9} Thomas argued that he did not waive or release his right to be refunded any overpayments by executing the settlement agreement. He submitted to the trial court that the mutual settlement and release clause contained in the settlement agreement was limited to "the subrogation lien, obligations and rights under ORC sections 4123.93 and 4123.931" and that because Dr. Yosowitz's fee was not a lawful part of BWC's subrogation claim it was not resolved in the parties' settlement agreement. (Apr. 26, 2024 Pl.'s Memo in Opp. at 4.)

{¶ 10} The trial court determined that BWC was entitled to judgment as a matter of law. It held that BWC acquired vested contractual rights as to the parties' obligations and rights under R.C. 4123.93 and 4123.931, designed to avoid further litigation as to BWC's subrogation interest, when the parties executed the settlement agreement.

## II. ASSIGNMENT OF ERROR

{¶ 11} Thomas appealed, asserting one assignment of error for our review:

> The Court of Claims erred, as a matter of law, by misconstruing
> the parties' limited release agreement and granting summary

judgment in favor of Defendant-Appellee, instead of Plaintiff-Appellant.

(Emphasis deleted.)  (Appellant's Brief at 1.)

## III.  DISCUSSION

{¶ 12}  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and, viewing the evidence in the light most favorable to the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  Civ.R. 56(C); *State ex rel. Grady v. State Empl. Relations Bd.*, 1997-Ohio-221.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29.

{¶ 13}  Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107.  The moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  If the moving party satisfies that burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial.  *Id.*; Civ.R. 56(E).  Because summary judgment is a procedural device used to terminate litigation before trial, it must be awarded with caution, and all doubts must be resolved in favor of the non-moving party. *Davis v. Loopco Industries, Inc.*, 1993-Ohio-195.

{¶ 14}  In reaching its decision, the Court of Claims examined *Holeton v. Crouse Cartage Co.*, 2001-Ohio-109, and the cases arising therefrom.  In *Holeton*, the Supreme Court of Ohio struck down the workers' compensation subrogation statute enacted in 1995 (former R.C. 4123.931) finding that it was unconstitutional.  After the Supreme Court struck down former R.C. 4123.931, this court considered the retroactive impact the *Holeton* decision had on settlement agreements releasing subrogation claims.  In *Clark v. Bureau of Workers' Comp.*, 2003-Ohio-2193 (10th Dist.), BWC asserted subrogation rights

pursuant to R.C. 4123.931, prior to the Supreme Court finding the statute unconstitutional, and this court found that the change in the law did not affect contractual rights that vested prior to the Supreme Court declaring the subrogation statute unconstitutional. *Id.* at ¶ 11-12. Likewise, in *Reinhart v. Ohio. Bur. of Workers' Comp.*, 2004-Ohio-312 (Ct. Of Cl.), the Court of Claims, relying on our decision in *Clark*, found that parties could not rescind their settlement agreement after the *Holeton* decision, because contractual rights vested prior to the Supreme Court finding the workers' compensation subrogation statute unconstitutional.

{¶ 15} These decisions, all relied on by the Court of Claims here, contemplate the question: Do contract rights vest in BWC's subrogation settlements with injured workers even though a court later finds the law underpinning the settlement agreement unconstitutional? The answer is resoundingly: yes. *See Burt v. Harris*, 2004-Ohio-756 ("[W]hen a court later finds the law in effect at the time the parties entered into the contract unconstitutional or otherwise invalid, contractual rights and obligations remain undisturbed.").

{¶ 16} But that is not the question in this case. Here, the Supreme Court did not find any provision of the Ohio Revised Code unconstitutional. Instead, it found BWC's conduct unlawful. The Supreme Court did not strike down R.C. 4123.93 or 4123.931; rather, it found that BWC was not following the law, because R.C. 4123.53(A) requires BWC to bear the cost of Dr. Yosowitz's medical review. There is a distinction between a state agency properly executing a law as written, even if that law is later struck down, versus the state agency acting outside the boundaries of good law. Therefore, the proper question in this case is simply: Can a state agency have vested contractual rights that release unlawful conduct? We think not. BWC cannot protect its unlawful conduct by cloaking it under release language contained in its settlement agreement.

{¶ 17} The parties stipulated that they executed a settlement agreement on May 12, 2015, which states in pertinent part:

> Claimant and the BWC agree and acknowledge it is their intent that this agreement is a full and complete settlement and release of the ***subrogation lien, obligations and rights under ORC sections 4123.93 and 4123.931***.
>
> Should any part or all of the statute or statutes governing this

> agreement be challenged and found to be unconstitutional, claimant, third party/parties and the BWC agree this settlement and release shall remain in full force and effect.

(Emphasis added.) (Mar. 15, 2024 Joint Stip., Ex. C.)

{¶ 18} The second sentence of the release language is irrelevant to our analysis in this case. No part of the statute governing the parties' settlement agreement has been found unconstitutional. The relevant question here concerns the scope of the first sentence. BWC argues that whether Dr. Yosowitz's fee was or was not properly included in its subrogation interest is "besides the point" because it was disclosed, and Thomas cannot claim to have entered into the settlement agreement without full knowledge of its inclusion. (Appellee's Brief at 33.) BWC submits that Thomas cannot now undo the parties' contract simply because the Supreme Court clarified BWC's subrogation interest. (Appellee's Brief at 34-35.) Thomas, on the other hand, argues that Dr. Yosowitz's fee, as a matter of law, has always been extraneous to the settlement agreement because it has always been outside the subrogation lien, obligations, and rights under R.C. 4123.93 and 4123.931. (Appellant's Brief at 27.)

{¶ 19} We agree with Thomas that the release language in the settlement agreement does not prevent him from seeking reimbursement from BWC for Dr. Yosowitz's fee. As used in the settlement agreement, the "subrogation lien" and the parties' rights and obligations with respect to subrogation are defined by statute and, as discussed above, do not include the costs for Dr. Yosowitz's medical review. Indeed, the Supreme Court expressly held, "The cost of Dr. Yosowitz's medical review is not contained within the statutory definition of 'subrogation interest.' " *Thomas*, 2023-Ohio-3522, at ¶ 17. Accordingly, we can only conclude that this disputed fee is not encapsulated by the "subrogation lien" language in the release.

{¶ 20} Further, the Supreme Court found that Dr. Yosowitz's fee was unlawfully included in BWC's subrogation demand, in part, because BWC is statutorily required to bear the cost of the medical reviews it orders. *See* R.C. 4123.53(A) ("A claimant required by the commission or administrator to submit to a medical examination . . . is entitled to have paid to the claimant by the bureau of workers' compensation the necessary and actual expenses on account of the attendance for the medical examination . . . after approval of

the expense statement by the bureau.").  As the Supreme Court held, the BWC's position that R.C. 4123.931 entitles it to recoup the cost of Dr. Yosowitz's medical review, for which it was required to bear the cost under R.C. 4123.53(A), is "logically, statutorily, and constitutionally" incorrect. *Thomas*, 2023-Ohio-3522, at ¶ 14. Similarly, we cannot construe the language of the settlement agreement to release any rights Thomas may have had or as releasing BWC from its obligations under R.C. 4123.53(A), which is not referenced anywhere in the release language.  Thomas' rights and BWC's obligations outlined in R.C. 4123.53(A) cannot be released as though they are the same as the rights and obligations in R.C. 4123.91 and 4123.931, to which the settlement agreement refers.

## IV.  CONCLUSION

{¶ 21} Based on the foregoing reasons, appellant's sole assignment of error is sustained, and we reverse the judgement of the Court of Claims of Ohio and remand this case back to that court for proceedings consistent with this decision.

*Judgment reversed*;
*cause remanded.*

JAMISON and EDELSTEIN, JJ., concur.